[No. B134267. Second Dist., Div. Three. Jan. 30, 2001.]

JAMES CHRISTIAN SIMS, Plaintiff and Respondent, v.
FRED M. CHARNESS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 2 of the Discussion.

## COUNSEL

Fred M. Charness, in pro. per., for Defendant and Appellant.

James Christian Sims, in pro. per., for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant Fred M. Charness (Charness) appeals a judgment in favor of plaintiff and respondent James Christian Sims (Sims) following a court trial.

The essential issue presented is whether a fee-sharing agreement between Attorneys Charness and Sims amounted to a *pure referral* and thus was subject to rule 2-200 of the Rules of Professional Conduct of the State Bar of California, requiring written disclosure to, and written consent by, the client.[1]

Rule 2-200 by its language is inapplicable where a member of the bar shares fees with a partner, associate, or fellow shareholder. (Rule 2-200(A).) However, a question remains as to the proper interpretation of the term "associate." (Rule 2-200(A).) Based on our analysis, we conclude that where an outside lawyer functions "on a particular matter essentially on the same basis as an employee of the law office" (State Bar Formal Opn. No. 1994-138), the outside lawyer is an associate for purposes of rule 2-200, and no case referral is involved. On the facts herein, the outside lawyer, Sims, was an associate of Charness. Accordingly, the rule does not preclude Sims from enforcing the fee-sharing agreement, and the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties are lawyers. Sims sued Charness for fraud, money had and received, breach of contract and of fiduciary duty, and intentional infliction of emotional distress. The action arose out of the parties' agreement to divide the attorney fees earned on several cases. Charness had the original

---

[1]All further rule references are to the Rules of Professional Conduct.

retainer agreement with the various clients. Charness brought in Sims for his trial expertise to try the cases. Sims resides in Oregon, is licensed in both Oregon and California, and also has a practice of his own.

### 1. *The Haze lawsuit.*

The principal dispute concerns Charness's case brought by Mr. and Mrs. Haze against the Vale Inn Motel (hereafter the Haze case). Pursuant to an oral agreement, Charness retained Sims to try the case in return for 60 percent of the attorney fees due under the client's retainer agreement in the event a favorable verdict were obtained. In March 1993, the jury returned a verdict for Mr. and Mrs. Haze in the amount of $300,600. Dissatisfied with certain matters in the trial and trial preparation, Mr. Haze subsequently filed a malpractice action against Sims, Charness and another participating lawyer, Dennis Braun, who leased space from Charness. Mr. Haze also disputed any award of attorney fees under the retainer agreement. The malpractice action by Mr. Haze was successfully defended and dismissed.

### 2. *The interpleader action.*

After the fee dispute arose, the attorneys for the defendant Vale Inn Motel interpled the funds awarded in the Haze case into court. They deposited a total of $182,548 for attorney fees, costs and postjudgment interest for disposition in the interpleader action. Charness hired Braun to handle the interpleader action, apparently agreeing to Braun's receipt of a 20 percent contingency fee. Mr. Haze defaulted in the interpleader action, and on July 6, 1995, judgment was entered in said action. The interpleader court awarded all the funds then on deposit, $195,506, including interest, to Charness. The $195,506 disbursement to Charness represented $116,080 for attorney fees, $33,079 for costs, and $46,346 for interest on the attorney fees and costs. Following entry of the interpleader judgment, Charness paid $35,000 to Braun for his services in the matter.

### 3. *Charness's accounting and payment to Sims.*

In September 1995, Charness submitted to Sims a combined statement of attorney fees due Sims on the Haze case, less setoffs for Braun's attorney fees and half of certain costs in another matter they handled, known as the Portillo case. Charness tendered a check to Sims for $43,000, which Sims negotiated. That sum was calculated, according to the statement, as $69,600, less half of Braun's attorney fees ($17,500), less half of the Portillo costs

($9,095).[2] Charness did not disclose the fact he had received $46,346 in interest in the interpleader action. The gross figure of $69,600 was about 60 percent of $116,080, the total net attorney fees recovered in the Haze case, thus implying that $116,080 was the total Charness had collected.

Sims promptly complained to Charness that Braun's attorney fees were excessive, that Sims was due $2,270 for reimbursement of his expenses of suit submitted to Charness in the Haze case, and that he did not owe half the Portillo costs. Sims subsequently learned that the amount tendered to him had failed to disclose the interpleader interest. Sims filed this action on February 9, 1996.

### 4. *Proceedings.*

The instant action was tried before the court sitting without a jury. The trial court found the agreement between Sims and Charness called for Charness to pay Sims 60 percent of the net attorney fees from the Haze case, payable upon receipt. Said agreement later was modified by the need to hire Braun to prosecute the interpleader action. Thus, the original fee split was subject to a $35,000 deduction for Braun's services in the interpleader action.

With respect to the proper computation, the trial court found: the total payout to Charness in the interpleader action was $195,506. Of that sum, Charness was entitled to retain his costs ($33,080); 40 percent of the $116,080 in attorney fees ($46,432); interest on those amounts ($24,706); and one-half of Braun's attorney fees ($17,500); for a total of $121,717. There was no agreement warranting the offset of the Portillo costs. Therefore, of the $195,506 payout, Sims was entitled to the remaining $73,789. Because Charness previously had paid Sims $43,005, there was an underpayment of $30,784. In addition, the trial court awarded Sims $10,000 in prejudgment interest, as well as an additional $5,000 in emotional distress damages on his breach of fiduciary duty claim.

The trial court also rejected Charness's affirmative defense that the fee-sharing agreement was unenforceable due to noncompliance with rule 2-200. The trial court ruled the fee-sharing agreement fell within an equitable exception to the illegal-contract unenforceability doctrine. The trial court found the purpose of rule 2-200 was to protect the client, but the underlying transaction was over, the fee dispute had been litigated to its conclusion, the

---

[2]The Portillo case had been tried by Sims to a disappointing verdict in the fall of 1993. In that action, the defendant's Code of Civil Procedure section 998 award eclipsed the plaintiff's verdict, and thus there were no net attorney fees to be shared.

harm to the client was a fait accompli and redress to the client was moot. The trial court also noted that although Mr. Haze did not consent in writing, the total fee charged to the client was not increased and the fee was not unconscionable. Further, Mr. Haze knew Sims was trying his case, made no objection, and must at least have known of, and probably tacitly consented to, Sims's compensation. The trial court reasoned that at this juncture, to apply rule 2-200 to defeat Sims's recovery would benefit only Charness, who would be unjustly enriched directly in the face of his breach of fiduciary duty to Sims.

Charness appealed the judgment.

## CONTENTIONS

Charness contends an oral fee-splitting agreement between attorneys is void as against public policy and the Rules of Professional Conduct. Further, even assuming the agreement herein is enforceable, the trial court erred in failing to assess profits and losses of the "joint venture" on a pro rata basis, and in calculating the profits and losses from the joint venture.

## DISCUSSION

1. *No merit to Charness's contention that noncompliance with rule 2-200 renders this fee-sharing agreement unenforceable by Sims; the agreement was not within rule 2-200 because Sims was an associate of Charness.*

a. *Rule 2-200 does not apply where an attorney is sharing a fee for legal services with an outside attorney who is functioning on a particular matter essentially on the same basis as an employee of the law office.*

Rule 2-200(A) provides: "A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless: (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and [¶] (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200."

In the instant case, the applicability of the written disclosure and written consent requirements of rule 2-200 turns on whether Sims, the outside lawyer, was an associate of Charness. If Sims was Charness's associate, their fee-sharing agreement was not subject to rule 2-200. Rule 2-200 is not

implicated unless a case referral was made by Charness to Sims in the first instance. If a referral took place, it would be necessary to obtain the referred client's written acknowledgment and consent to the fee-sharing agreement, in compliance with rule 2-200.

Rule 2-200 does not define the term "associate." We resort to rule 1-100(B)(4), in an effort to interpret the term. Rule 1-100(B)(4) defines an associate in general terms as "an employee or fellow employee who is employed as a lawyer." However, neither the rules nor the State Bar formal opinion pertaining to rule 2-200 provides greater specificity.

State Bar Formal Opinion No. 1994-138, which construed rule 2-200, states the "California Rules of Professional Conduct do not establish a criteria for determining when a lawyer is an employee. *The determination of status as an 'employee' is a legal question that the committee will not address in this opinion.* If the outside lawyer is an employee, then the requirements of rule 2-200(A)(1) do not apply if the law office is splitting its fees with the outside lawyer. If the outside lawyer is not an employee then the requirements of rules 2-200(A)(1) and 2-200(A)(2) will apply in such situations. For purposes of this opinion, the committee will assume that the attorney is not an employee of the principal law office." (State Bar Formal Opn. No. 1994-138, *supra*, Introduction, italics added.)

In further pursuit of a reasoned interpretation of the terms used in rule 2-200, we also look to the *purpose* for which the rule was conceived. The history "behind rule 2-200 and its predecessor, rule 2-108, indicate that the rule was intended to address concerns related to forwarding or referral fees, typically found in contingency fee situations. In the referral fee situation, one lawyer receives a portion of a fee for referring a client to a second lawyer to handle the case. Courts recognized the *'pure referral'* as one '. . . which compensates one lawyer with a percentage of a contingent fee for doing nothing more than obtaining the signature of a client upon a retainer agreement while the lawyer to whom the case is referred performs the work . . . .' [Citations.] Rule 2-200 and its predecessors were designed to provide consumer protection by regulating the practice of 'brokering' cases through disclosure to the client and a prohibition on increasing a client's fee to compensate the referring lawyer who does not work on the matter. [Citations.] [¶] . . . *There is nothing in the history of rule 2-200 that indicates it was targeted at compensation arrangements involving outside lawyers functioning on a particular matter essentially on the same basis as an employee of the law office.*" (State Bar Formal Opn. No. 1994-138, *supra*, Discussion, pt. A, italics added.)

Mindful of the objective of rule 2-200, which is consumer/client protection, it would appear that where an outside lawyer is employed for that

lawyer's expertise in any given area of the law, including trial skills, and is paid for those services, whether based on a contingency or other mode of payment, no pure referral as discussed above is implicated. Rather, the outside lawyer is deemed an associate for purposes of the rule and is functioning as an employee of the law firm.

 b. *On the facts herein, the agreement between Charness and Sims was not governed by rule 2-200 because Sims was Charness's associate within the contemplation of the rule.*

■ The record in this case compels the conclusion Charness did not refer the cases to Sims in exchange for a percentage of the fees. Initially, we note that Sims resides in Oregon and has a practice of his own. He came to Los Angeles to try the cases for Charness. Rather than relinquishing the cases, Charness continued his involvement, and simply brought in Sims with his trial expertise to try the cases.[3] In that capacity, Sims was functioning as Charness's employee or associate.

The evidence further established Charness at all times remained attorney of record; Sims never substituted in as attorney of record. All documents were on Charness's letterhead. All legal documents and correspondence were directed to Charness. Case files were kept at Charness's office. Charness took care of the costs.

In addition, of necessity, Sims used Charness's office for client and witness meetings, used Charness's office equipment and research library, worked out of Charness's office during trial, and utilized Charness's office staff. During the time that Sims was handling the cases for Charness, he worked exclusively for Charness.[4]

Charness did not simply hand off the cases to Sims. Sims's role was to prepare the cases for trial and to handle the trials, while Charness retained responsibility for pretrial and posttrial appearances. Document preparation was under the supervision of both attorneys. Charness participated in decisions concerning trial preparation and trial, including preparation of the

---

[3]The purpose of resorting to outside specialists, whether by way of employment or by way of a pure referral, is to better serve the consumer/client. As we recently observed: "Permitting attorney's fees to be shared promotes referrals by 'less capable lawyers to . . . experienced specialists . . . .' (*Moran v. Harris* (1982) 131 Cal.App.3d 913, 922 [182 Cal.Rptr. 519, 28 A.L.R.4th 655].) Thus, the client can benefit from the referral, as can both the experienced attorney, and 'the conscientious, but less experienced lawyer [who] is subsidized to competently handle the cases he retains . . . .' " (*Margolin v. Shemaria* (2000) 85 Cal.App.4th 891, 894, fn. 2 [102 Cal.Rptr.2d 502].)

[4]Rule 3-500 provides: "A member shall keep a client reasonably informed about significant developments relating to the employment or representation[.]" The record reflects that Mr. Haze apparently understood that Sims was Charness's associate.

statement of the case, the exhibit list, the selection of experts, witness selection, and trial strategy. Charness retained authority over decisions concerning trial preparation and trial. Sims also had to obtain Charness's approval before incurring any costs.

All these facts clearly indicate this was not the arrangement between two lawyers involving forwarding or referral fees, or a "pure referral," typically found in contingency fee situations and sought to be regulated by rule 2-200. Charness merely hired Sims for the purpose of handling trial preparation and trials due to his greater expertise. Charness retained control over Sims's involvement just as Charness would have in the case of an associate or an employee in his office. Accordingly, their contingency fee-sharing agreement was not subject to the requirements of the rule.

 c. *Trial court's rationale immaterial.*

The trial court ruled that although the fee-sharing agreement failed to comply with rule 2-200, the agreement was enforceable on equitable grounds. The better rationale, as explained above, is that the agreement between Charness and Sims was not subject to the requirements of rule 2-200.[5]

■ "[The trial court's ruling] . . . however, does not compel reversal of the judgment. '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10].)

Because the trial court's decision enforcing the fee-sharing agreement is correct in result, it will be upheld.

 d. *Case law precluding enforcement of fee-sharing agreement based on noncompliance with rule 2-200 is inapposite.*

In contending that noncompliance with rule 2-200 renders the instant fee-sharing agreement unenforceable, Charness invokes *Scolinos v. Kolts* (1995)

---

[5]We repeat, however, the view we expressed in *Margolin v. Shemaria, supra,* 85 Cal.App.4th at page 903, footnote 7 as follows: "By this opinion, we do not decide whether we would refuse to apply the doctrine of equitable estoppel in a situation where the attorney seeking to enforce a fee-sharing agreement that does not comply with rule 2-200 is the attorney *to whom* the case was referred, since such an attorney would be the one that did most or all the work on the case and reliance on the assurances of referring counsel (who necessarily has the original client relationship) might well be reasonable."

37 Cal.App.4th 635 [44 Cal.Rptr.2d 31] and *Campagna v. City of Sanger* (1996) 42 Cal.App.4th 533 [49 Cal.Rptr.2d 676]. Those cases are inapposite because, unlike the instant case involving an employment of outside counsel, they involve referrals of cases from one attorney to another. The specific facts in each case must necessarily inform our determination as to the applicable law.

In *Scolinos*, the client was referred by attorney Scolinos to the defendant attorneys, who represented her in a wrongful termination action. The defendants obtained a $390,000 settlement for the client and received over $90,000 in attorney fees. Scolinos then brought a breach of contract action against the defendants to recover a referral fee of one-third of the attorney fees received by defendants in the underlying case. (*Scolinos v. Kolts, supra,* 37 Cal.App.4th at p. 637.) We held that noncompliance with former rule 2-108 (the predecessor to rule 2-200) rendered the alleged referral agreement unenforceable on public policy grounds. (37 Cal.App.4th at pp. 639-640.) We reasoned "[i]t would be absurd if an attorney were allowed to enforce an unethical fee agreement through court action, even though the attorney potentially is subject to professional discipline for entering into the agreement." (*Id.* at p. 640.)

In *Campagna*, a city contracted with an attorney for the provision of certain legal services as a deputy city attorney. The deputy city attorney, acting on behalf of the city, retained an outside law firm for litigation on a contingency fee basis; the attorney also negotiated a separate *oral* agreement with the outside law firm whereby his firm would receive a percentage of the total contingency fee. (*Campagna v. City of Sanger, supra,* 42 Cal.App.4th at pp. 535-536.) Before the underlying litigation went to trial, the city asserted the contingency fee agreement was invalid and that it was unlawful for the deputy city attorney to have an interest in the contract which he negotiated on behalf of the city in his official capacity. After the underlying litigation settled, the city insisted that the deputy city attorney not be paid his share of the fee. The deputy city attorney sued for declaratory relief. (*Id.* at pp. 536-537.) A judgment for the plaintiff deputy city attorney was reversed on appeal. *Campagna* held, inter alia, the deputy city attorney had failed to comply with former rule 2-108, rule 2-200's predecessor, and had forfeited his right to his share of the fees under the referral fee agreement. (*Id.* at p. 542.)

Another in this line of cases is *Margolin v. Shemaria, supra,* 85 Cal.App.4th 891, which is yet another fact-specific case involving a breach of contract suit between two law firms and their attorneys. The plaintiffs claimed they referred a case to Shemaria in consideration for his oral

agreement to provide the referred client with written disclosure of the referral agreement required by rule 2-200, obtain the referred client's written acknowledgment and consent thereto, and provide the plaintiffs with 50 percent of any fee received by him in conjunction with his representation of the referred client. (85 Cal.App.4th at pp. 894-895.) The trial court rejected the plaintiffs' claim and granted Shemaria a directed verdict, finding that the plaintiffs did not have a viable contract with Shemaria for fee sharing because the contract failed to comply with rule 2-200. (85 Cal.App.4th at p. 894.) This court affirmed, holding that equitable estoppel was not available to the plaintiffs to overcome Shemaria's assertion of rule 2-200 as a defense to the lawsuit. (85 Cal.App.4th at p. 901.) We concluded "the public policy considerations which caused rule 2-200 to be enacted for the benefit of the public also require that the fee-sharing agreement between plaintiffs and Shemaria not be enforced by a court of law. [Fn. omitted.]" (*Margolin v. Shemaria, supra,* 85 Cal.App.4th at p. 903, italics omitted.)

None of these cases are helpful to Charness. As explained, because on our facts Sims was Charness's employee or associate, their fee-sharing agreement was not subject to the procedural requirements of rule 2-200. To reiterate, Sims was hired to try Charness's lawsuits and had all the indicia of an employee/associate. Therefore, case law addressing the consequences of noncompliance with rule 2-200 is unavailing to Charness.

2. *Remaining contentions unavailing.**

. . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Sims to recover costs on appeal.

Croskey, J., and Perluss, J.,† concurred.

---

*See footnote, *ante*, page 884.
†Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.