[No. S098007. Nov. 4, 2002.]

ARTHUR CHAMBERS, Plaintiff and Appellant, v.
PHILIP KAY, Defendant and Respondent.

**COUNSEL**

Werchick & Werchick, Arne Werchick; Bornstein & Bornstein, Jonathan H. Bornstein; Law Offices of Joel D. Adler and Joel Adler for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Steven D. Wasserman, Thomas F. Kopshever, Kirk C. Jenkins; Law Offices of Philip Edward Kay, Philip Edward Kay and Lawrence Anthony Organ for Defendant and Respondent.

Marie M. Moffat, Lawrence C. Yee and Jay Goldman for State Bar of California as Amicus Curiae.

## OPINION

**BAXTER, J.**—This matter arises from a dispute between two attorneys over contingent fees generated from the successful prosecution of a client's lawsuit against third parties. Rule 2-200(A)(1) of the California Rules of Professional Conduct (all further references to rules are to these rules), which this court approved to protect the public and to promote respect and confidence in the legal profession, provides in pertinent part that a member of the State Bar "shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless . . . [¶] . . . [t]he client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division . . . ." Here, the plaintiff attorney seeks a division or apportionment of fees despite noncompliance with the rule's written client consent requirement. We conclude, based on the uncontroverted record before us, that rule 2-200(A)(1) is binding on plaintiff and precludes him from sharing in the subject fees. Accordingly, we affirm the judgment of the Court of Appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Attorneys Arthur Chambers and Philip Kay had separate law practices in San Francisco. They had individual office letterheads; Kay listed his home law office on 43d Avenue as his professional address, while Chambers listed his office address as 1388 Sutter Street, suite 510. Kay also maintained a separate professional liability insurance policy for his practice. Except perhaps as otherwise noted below, Chambers and Kay did not list each other as employees or partners in any official documents.

In 1992 and 1993, Kay paid Chambers $200 per month to use a conference room in Chambers's office on Sutter Street for depositions and client meetings. Kay used Chambers's office telephone service, law library, and postage and copy machines. Kay also maintained files and a computer in the office, rented a monthly space in the building parking lot, and was listed as a cotenant on the building directory. Chambers assisted Kay with his work

on a few cases. Additionally, Chambers's staff regularly provided assistance to Kay with case-related documents.

In 1992, at Kay's request, Chambers began serving as cocounsel in a sexual harassment action that Kay had previously filed on behalf of his client, Rena Weeks, against Martin Greenstein and the law firm of Baker & McKenzie (hereafter *Weeks* or the *Weeks* case). Chambers's responsibilities in the case included maintaining the files, conducting discovery that Kay assigned to him, conferring with Weeks in the office, and appearing as cocounsel on her behalf at pretrial hearings. Both Chambers and Kay were listed in the *Weeks* case pleadings as plaintiff's counsel, at the Sutter Street office address, and Chambers advanced costs and expenses of $3,356.32 in the case. Chambers, however, continued to work on other cases he had at the time.

During discovery in *Weeks*, a dispute arose between Chambers and Kay over the disclosure of certain documents and Chambers's alleged efforts to persuade Weeks to settle. On September 29, 1993, Kay notified Chambers by letter that Chambers was removed effective immediately from the *Weeks* case with the client's approval. Kay's letter confirmed that Chambers would "receive the compensation agreed upon," that is: in the event the case was settled before depositions, "16.5% of the attorney's fees called for under my agreement with [Weeks], which is 40% of the monies recovered"; thereafter, an "increase to 28%" of the fees specified under the agreement with Weeks; and reimbursement of the costs Chambers had advanced to date. Kay sent a copy of the letter to Weeks, but never sought or obtained her written or oral consent to the proposed fee division with Chambers.

Chambers sent a letter to Kay accepting his compensation offer. On September 30, 1993, Kay filed a "Notice of Association and Disassociation of Counsel" in *Weeks*, stating that Alan B. Exelrod had been "associated as counsel of record" in place of Chambers.

On November 1, 1993, Kay wrote to Chambers complaining of his "malfeasance" and violation of fiduciary duties to Weeks. Kay reiterated that Chambers would receive the "payment as originally agreed upon of one-sixth of the attorney's fees of forty-percent (40%)" recovered in *Weeks* upon submission of his time records. Unlike the September 29 letter, this letter did not show a copy to the client.

The *Weeks* case eventually was tried to a jury, resulting in a large award of compensatory and punitive damages for Weeks and a significant award of attorney fees. Counsel for Kay then wrote to Chambers informing him that

his "failure to perform legal services" in the *Weeks* case, the "wholly improper accounting" provided in his attorney fees billing statement, and unforeseen "changed circumstances" all served "as a basis for abrogation of any agreement" between them as to a fee division. This letter contained an offer to compensate Chambers for his services in *Weeks* in the amount of $200 per hour for the total number of hours specified in his prior billing statement. Chambers declined Kay's offer and proposed mediation of their fee dispute.

The judgment in favor of Weeks, including the attorney fee award, was affirmed on appeal in 1998. After that judgment was satisfied and Kay obtained his attorney fees, Chambers initiated this action alleging one cause of action for breach of contract and one common count. The trial court granted summary judgment in favor of Kay on grounds that: (1) the parties' alleged agreement for a division of fees violated rule 2-200 and therefore was unenforceable; and (2) the governing statutes of limitations (Code Civ. Proc., §§ 337, 339) barred the common count seeking quantum meruit recovery. The Court of Appeal reversed the judgment in favor of Kay on the quantum meruit claim, but otherwise affirmed the judgment. We granted Chambers's petition for review.

## DISCUSSION

As relevant here, rule 2-200 provides: "(A) A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless: [¶] (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and [¶] (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200."

 Both the trial court and the Court of Appeal below determined that Chambers cannot prevail on his breach of contract cause of action because it is premised on a fee-splitting agreement that failed to comply with rule 2-200. Chambers challenges those determinations on the grounds that: (1) rule 2-200 governs fee divisions between attorneys only where "pure referral fees" are at issue and therefore does not apply here; (2) even if rule 2-200 is not limited in application to pure referral fees, the arrangement here falls within the rule's express exemption for fees divided between a member of the State Bar and "a partner of, associate of, or shareholder with" the member; and (3) in any event, noncompliance with rule 2-200 does not render the fee-splitting agreement invalid and unenforceable. Additionally,

Chambers contends that the Court of Appeal erred in concluding that a quantum meruit award could not be predicated on the apportionment of the contingent fee paid to Kay. We shall address these issues in order.

A. *Applicability of Rule 2-200*

■ The interpretation of rule 2-200 presents a question of law that is subject to our independent review. (*Margolin v. Shemaria* (2000) 85 Cal.App.4th 891, 895 [102 Cal.Rptr.2d 502] (*Margolin*).)

■ As noted, rule 2-200 states that a member of the State Bar "*shall not divide a fee for legal services with a lawyer* who is not a partner of, associate of, or shareholder with the member" unless the requirements specified in the rule have been met. (Rule 2-200(A), italics added.) Significantly, the rule does not limit its application to "pure referral fees" (hereafter referral fees), in which one lawyer receives " 'a percentage of a contingent fee for doing nothing more than obtaining the signature of a client upon a retainer agreement while the lawyer to whom the case is referred performs the work.' " (*Moran v. Harris* (1982) 131 Cal.App.3d 913, 921 [182 Cal.Rptr. 519, 28 A.L.R.4th 655].) Nor does it purport to categorically exempt fee divisions among attorneys who work jointly on behalf of a client. Rather, rule 2-200's language, reasonably read, appears to encompass any division of fees where the attorneys working for the client are not partners or associates of each other, or are not shareholders in the same law firm.

The history of rule 2-200 supports this construction. Rule 2-200 was preceded by former rule 2-108, which in turn was preceded by former rule 22. Before 1972, the Rules of Professional Conduct did not specifically prohibit fee sharing among lawyers. (*Breckler v. Thaler* (1978) 87 Cal.App.3d 189, 195, fn. 4 [151 Cal.Rptr. 50].) That changed in November of 1972, when former rule 22 was adopted. Notably, former rule 22 forbade attorneys to divide fees unless the division was "in proportion to the services performed or responsibility assumed by each" (*id.*, subd. (a)(2)), the terms of the division were disclosed to the client, and the client consented to them (*id.*, subd. (a)(1)), and the total fee did not clearly exceed reasonable compensation for all legal services rendered (*id.*, subd. (a)(3)).[1] Thus, under former rule 22, dividing a fee on the basis of a referral was absolutely banned, while dividing a fee between attorneys working jointly for the client

---

[1] Former rule 22 provided in relevant part: " '(a) A member of the State Bar shall not divide a fee for legal services with another attorney who is not a partner in or associate of his law firm or law office, unless: [¶] (1) the client consents to employment of another attorney after a disclosure that a division of fees will be made; and [¶] (2) the division is made in proportion to the services performed or responsibility assumed by each; and [¶] (3) the total fee of the attorneys does not clearly exceed reasonable compensation for all legal services they render to

was permitted if certain conditions were satisfied. Former rule 22 was renumbered as rule 2-108 and was then revised in 1979 to eliminate the ban on referral fees. At the same time, the rule retained the client consent requirement and total fee restrictions for fee divisions. It further specified that disclosure to the client and the client's consent must both be in writing.[2] The 1979 amended version of former rule 2-108 is very similar to current rule 2-200 on these points. In sum, this history indicates that the rule governing fee divisions among attorneys, from its inception as former rule 22 in 1972 to its current embodiment in rule 2-200, was never limited in application to fee divisions involving only referral fees.

Our construction also is consistent with Formal Opinion No. 1994-138 of the State Bar Standing Committee on Professional Responsibility and Conduct (State Bar Formal Opinion No. 1994-138), which describes criteria relevant to ascertaining whether a fee division falls within the scope of rule 2-200. Specifically, State Bar Formal Opinion No. 1994-138 considers various scenarios in which a principal law office periodically might use an outside lawyer to assist the office's clients in specific matters—for example, to meet temporary staffing needs or to provide special expertise not available in the office and needed for work on a specific matter. In analyzing the issue, the opinion assumes that the outside lawyer has no formal relationship with the law office or the client other than working on particular matters, and that neither the law office nor the outside lawyer contemplates a permanent relationship. Under such circumstances, the opinion concludes, rule 2-200's requirements apply if the compensation arrangement between the law office and the outside lawyer involves a direct division of the actual fees the client pays to the law office. For instance, the opinion explains, rule 2-200 applies if "the client pays $1,500 for a project and the outside lawyer receives 30 percent of that amount." (State Bar Formal Opn. No. 1994-138, pp. 1, 3.) Here, the undisputed facts parallel the cited example: (1) Chambers and Kay neither had nor contemplated a formal or permanent relationship with each other; (2) they merely worked together in a few cases; and (3) Chambers seeks a percentage of the contingent fee that Kay and Weeks negotiated as compensation for his legal services in the *Weeks* case.

the client.' " (*Altschul v. Sayble* (1978) 83 Cal.App.3d 153, 161, fn. 5 [147 Cal.Rptr. 716], quoting former rule 22.)

[2] As revised in 1979, former rule 2-108(A) provided in pertinent part: " 'A member of the State Bar shall not divide a fee for legal services with another person licensed to practice law who is not a partner or associate in the member's law firm or law office, unless: [¶] (1) The client consents in writing to employment of the other person licensed to practice law after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and [¶] (2) The total fee charged by all persons licensed to practice law is not increased solely by reason of the provision for division of fees and does not exceed reasonable compensation for all services they render to the client.' " (*Moran v. Harris, supra,* 131 Cal.App.3d at p. 916, fn. 2, quoting former rule 2-108.)

In sum, the language, the history, and State Bar Formal Opinion No. 1994-138 all point to the conclusion that rule 2-200 applies to fee divisions where, as here, work for the client is also divided.

### B. *Rule 2-200's Exemption for Partners and Associates*

Rule 2-200, by its terms, does not restrict the division of fees between a State Bar member and a lawyer who is "a partner of, associate of, or shareholder with" that member. We next consider Chambers's contention that, although he and Kay maintained separate law practices when acting as Weeks's cocounsel, their arrangement to divide fees in *Weeks* was not subject to restriction because Chambers was Kay's partner or associate.

Chambers first argues that, once he and Kay put their names jointly on pleadings in the *Weeks* case, made joint court appearances on Weeks's behalf, and acted as "true *co-counsel*" in the lawsuit, they functioned as partners within the meaning of rule 2-200's exemption. He additionally asserts that the agreement between Kay and him to work jointly, to contribute to the lawsuit's costs, and to defer any compensation for work performed for several years removed their agreed fee division from the ambit of rule 2-200. We disagree. Although rule 2-200 does not define the terms "partner" and "associate," the rule's language and history indicate these terms are not meant to apply in the circumstances established here.

Rule 1-100(B)(1)(a) defines a " '[l]aw [f]irm' " as "two or more lawyers whose activities constitute the practice of law, and who share its profits, expenses, and liabilities." The record in this case indisputably establishes that although Chambers and Kay shared certain office space and facilities, with Kay paying Chambers for their use, the two maintained independent law practices with separate identities, separate addresses of record with the State Bar, and separate clients, expenses, and liabilities. Thus, even though Chambers and Kay worked together in *Weeks* and a few other cases, they were not members of the same law firm as defined by the Rules of Professional Conduct.

Although the rules omit a definition of the term "partner," Chambers and Kay were not in a partnership and were not each other's partner as those terms are commonly understood. The Corporations Code defines a partnership as "an association of two or more persons to carry on as coowners a business for profit under Section 16202, predecessor law, or comparable law

of another jurisdiction." (Corp. Code, § 16101, subd. (7).)[3] Generally, a partnership connotes co-ownership in partnership property, with a sharing in the profits and losses of a continuing business. (*Nelson v. Abraham* (1947) 29 Cal.2d 745, 749 [177 P.2d 931].)[4] Here, no evidence suggests that Chambers and Kay acted as co-owners of a law firm or law office, or that they contemplated sharing in the profits and losses of a continuing business engaged in the practice of law.

 In *Bank of California v. Connolly* (1973) 36 Cal.App.3d 350 [111 Cal.Rptr. 468], the Court of Appeal explained that "[a] joint venture exists where there is an 'agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.'" (*Id.* at p. 364.) In comparing joint ventures with partnerships, the court commented that "the incidents of both relationships *are the same in all essential respects*." (*Ibid.*, italics added.) Here, Chambers asserts that the *Weeks* case essentially represented a joint venture in which he and Kay agreed to work together, share in the costs, and defer any compensation for work performed for several years in the hopes of splitting profits when the case was concluded. In Chambers's view, rule 2-200's partner exemption properly applies because, as joint venturers, he and Kay functioned as partners for that single transaction. We disagree.

 Whereas a partnership ordinarily involves a continuing business for an indefinite or fixed period of time, it is commonly understood that a joint venture is usually formed for a single business transaction or enterprise. (See *Weiner v. Fleischman* (1991) 54 Cal.3d 476, 482 [286 Cal.Rptr. 40, 816 P.2d 892]; *Bunn v. Lucas, Pino & Lucas* (1959) 172 Cal.App.2d 450, 461 [342 P.2d 508] (*Bunn*).) But while rule 2-200 expressly exempts fee divisions between attorneys who are partners, it makes no mention of an exemption for fee divisions between attorneys who are joint venturers.

Moreover, even though the law generally pertaining to partnerships may sometimes apply to joint ventures (*Weiner v. Fleischman, supra*, 54 Cal.3d at

---

[3]Corporations Code section 16202, in turn, provides that in determining whether a partnership is formed, the following rule, among others, applies: "A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received for any of the following reasons: [¶] . . . . [¶] . . . In payment for services as an independent contractor or of wages or other compensation to an employee." (Corp. Code, § 16202, subd. (c)(3)(B).)

[4]Nothing in the Corporations Code excepts lawyers from its terms; nor have the parties here directed us to any legislative history or other authority indicating that these general principles pertaining to partnerships were intended to apply to all partners except those who happen to be lawyers.

p. 482), our sole concern here is the proper interpretation of rule 2-200. We conclude that, even assuming Chambers correctly characterizes his relationship with Kay as a joint venture (but see *Bunn, supra,* 172 Cal.App.2d at p. 463 [plaintiff attorneys' acquiescence in defendant attorneys' power to terminate their services in a client matter appeared inconsistent with the plaintiffs' claim that their relationship with the defendants was in the nature of a joint venture]), it would be unreasonable to construe the exemption for partners as implying an additional exemption for joint venturers.

As discussed, the language and history of rule 2-200 make evident that its requirements have always applied to fee divisions where work on the client's behalf is divided among attorneys from separate law firms or law offices. But were we to imply a joint venturer exemption, we essentially would stretch the rule's exemptions "so as to cover situations which were not contemplated by the rule" (*Jorgensen v. Taco Bell Corp.* (1996) 50 Cal.App.4th 1398, 1401 [58 Cal.Rptr.2d 178]), with the effect that the rule's exemptions would appear to swallow the rule itself. Indeed, not only would the implied exemption severely limit rule 2-200's application to fee divisions involving attorneys working jointly, but it would seem to eliminate the rule's application to all fee divisions, including those involving referral fees.

We next consider whether Chambers was Kay's "associate" within the meaning of rule 2-200. Although rule 2-200 does not define what it means by the term, the Rules of Professional Conduct elsewhere provide that an associate is "an employee or fellow employee who is employed as a lawyer." (Rule 1-100(B)(4).)

Here, the record is undisputed that Chambers was never Kay's salaried employee and that Chambers did not expect Kay to pay him a salary or other wages as compensation for his work in *Weeks*. On the contrary, all of the evidence shows that the parties agreed Chambers would be compensated based solely on a percentage of any contingent fee that Weeks paid to Kay. The evidence also establishes that Chambers advanced costs in the *Weeks* case, reflecting additional conduct inconsistent with his claim to have been Kay's employee. Viewed together, these uncontroverted facts establish a "division of fees" governed by rule 2-200, not an agreement to employ Chambers as an associate. (State Bar Formal Opn. No. 1994-138, p. 2.)

While Kay may have controlled Chambers's involvement in the *Weeks* case and supervised his work, it remains undisputed that Chambers's compensation was linked to the client's ultimate payment of a contingent fee. ██ That being the case, Kay's authority over Chambers's involvement in the case did not transmute the parties' compensation arrangement

from one based on a division of fees to one reflecting an employer-employee relationship. (Accord, ABA Com. on Prof. Ethics, formal opn. No. 88-356 (1988) [if "the arrangement between the firm and the temporary lawyer involves a direct division of the actual fee paid by the client, such as percentage division of a contingent fee, then Rule 1.5(e)(1) [of the American Bar Association Model Rules of Professional Conduct] requires the consent of the client and satisfaction of the other requirements of the Rule" regardless of the degree to which the firm supervised the temporary lawyer].)[5]

 We recognize that *Sims v. Charness* (2001) 86 Cal.App.4th 884 [103 Cal.Rptr.2d 619] (*Sims*) came to a contrary conclusion. In that case, one attorney agreed to share contingency fees in several client matters with a second attorney, who agreed to try the matters. *Sims* found that the requirements of rule 2-200 did not apply because the attorneys' fee-sharing agreement did not involve an arrangement for fees on a pure referral basis and because the first attorney continued to work on the client matters while retaining control over the second attorney's involvement, just as he would have in the case of an associate or an employee in his office. (*Sims, supra,* 86 Cal.App.4th at p. 892.)

We are not persuaded by the *Sims* decision, for it reaches a result that is inconsistent with the very authority on which it purports to rely, i.e., State Bar Formal Opinion No. 1994-138. *Sims* correctly observes the formal opinion explains that the history " 'behind rule 2-200 and its predecessor, rule 2-108, indicate[s] that the rule was intended to address concerns related to forwarding or referral fees, typically found in contingency fee situations. . . . Rule 2-200 and its predecessors were designed to provide consumer protection by regulating the practice of "brokering" cases through disclosure to the client and a prohibition on increasing a client's fee to compensate the referring lawyer who does not work on the matter. [Citations.] [¶] . . . *There is nothing in the history of rule 2-200 that indicates it was targeted at compensation arrangements involving outside lawyers functioning on a particular matter essentially on the same basis as an employee of the law office.*' " (*Sims, supra,* 86 Cal.App.4th at p. 890, quoting State Bar Formal Opn. No. 1994-138, italics added by *Sims.*)

But unlike *Sims*, we do not read the foregoing passage as authority for the proposition that rule 2-200 applies only to pure referral fees. State Bar

---

[5]American Bar Association Model Rules of Professional Conduct, rule 1.5(e) assumes that referral fees are not at issue.

The California Rules of Professional Conduct provide that ethics opinions and rules and standards promulgated by other jurisdictions and bar associations, while not binding, may be considered in determining when conduct is prohibited under the rules. (Rule 1-100(A), 3d par.)

Formal Opinion No. 1994-138 correctly finds that a *primary* aim of the rule and its predecessor is to address concerns related to referral fees, but nowhere does it imply that restriction of referral fees is the rule's *sole* aim or that arrangements involving the division of both work and fees fall outside the rule's scope. On the contrary, the opinion specifically addresses the rule's application to such arrangements.

■ In acknowledging that rule 2-200 does not target compensation of outside lawyers who function "essentially on the same basis" as an employee or associate of the law office, State Bar Formal Opinion No. 1994-138 determines no division of fees occurs under rule 2-200 where the following three criteria are met: "(1) the amount paid to the outside lawyer is compensation for the work performed and is paid whether or not the law office is paid by the client; (2) the amount paid by the attorney to the outside lawyer is neither negotiated nor based on fees which have been paid to the attorney by the client; and (3) the outside lawyer has no expectation of receiving a percentage fee." (State Bar Formal Opn. No. 1994-138, p. 2.)[6] But in finding rule 2-200 inapplicable to the fee agreement before it, *Sims* overlooked the fact that the agreement demonstrated none of these three criteria. To the extent *Sims* relies on the formal opinion to reach its contrary views, then, such reliance was misplaced.[7]

■ As in *Sims*, the arrangement between Chambers and Kay meets none of the criteria set forth in State Bar Formal Opinion No. 1994-138 for determining whether a lawyer functions essentially as an employee: (1) Chambers and Kay did not agree that Chambers would be compensated for work performed whether or not the client paid Kay; (2) Chambers's compensation was both negotiated and based on fees that the client would pay to

---

[6]The formal opinion lists the following three examples of compensation arrangements that would not constitute a division of fees under rule 2-200: (1) the outside lawyer is paid an hourly rate that is less than the hourly rate for the outside lawyer's services billed to the client (e.g., the outside lawyer is paid $50 an hour but is billed at $70 per hour to the client); (2) the outside lawyer is paid a flat rate per day or week (e.g., the outside lawyer is paid $150 per day); and (3) the outside lawyer is paid the amount billed to the client for her time as the fees are paid by the client (e.g., the outside lawyer's rate is $100 per hour for a project, and every dollar paid to the law office for work performed on that project is immediately paid to the outside lawyer). (State Bar Formal Opn. No. 1994-138, pp. 1, 3.) According to the formal opinion, the first two examples do not involve a division of fees because the amount paid to the outside lawyer is not tied to specific legal fees the law office receives, and the office must pay the outside lawyer whether or not the client pays the office. In such situations, the payments to the outside lawyer are "similar to compensation paid to non-lawyer employees such as law students and paralegals." (*Id.* at p. 3.) The opinion concludes that the third example is not a fee division because the outside lawyer receives all the fee that is charged, and the law office receives no portion of the fee. (*Ibid.*)

[7]We disapprove *Sims v. Charness, supra,* 86 Cal.App.4th 884, insofar as it is inconsistent with the views expressed herein.

Kay; and (3) under the agreed arrangement, Chambers expected to receive a percentage fee. The combination of these undisputed facts leads us to conclude that Chambers did not render his professional services in the *Weeks* case essentially as an employee of Kay and that he therefore falls outside of rule 2-200's exemption for associates.

Chambers next relies on *Bunn, supra*, 172 Cal.App.2d 450, to urge that if attorneys associating on a case do not stand in the relationship of joint venturers, then one is the employee of the other for purposes of rule 2-200's associate exemption. In *Bunn*, the plaintiff lawyers contended that they had a joint venture relationship with the defendant attorneys, and that, as joint venturers, they were entitled to share equally in whatever fee the defendant lawyers received under their agreement with the client. *Bunn* rejected this contention and determined that the plaintiffs and the defendants stood in an employer-employee relationship because, among other things: (1) the defendants had hired the plaintiffs to provide legal assistance in a probate litigation, and the plaintiffs accepted employment for the sum of $15,000, contingent on the litigation's success; (2) the defendants remained the client's only attorneys of record; (3) when a new matter not contemplated by the original employment contract arose, the parties spoke in terms of "readjusting" the existing fee amount rather than sharing or dividing any fee to be received from the client; and (4) the defendants retained authority to fire and did fire the plaintiffs after a dispute arose over the fees due. (*Bunn, supra*, 172 Cal.App.2d at pp. 461-464.)

*Bunn* fails to aid Chambers's position. The finding of an employer-employee relationship in *Bunn* was due in part to the circumstance that the plaintiff lawyers never expected to share or divide the fee that the defendant attorneys were to receive from the client. (See *Bunn, supra*, 172 Cal.App.2d at pp. 461, 463.) Here, however, the evidence uniformly discloses that Chambers agreed to compensation based solely on a percentage of any contingent fee the client paid to Kay—this key factual difference undermines the attempted analogy to the employer-employee relationship found in *Bunn*. In any event, *Bunn* long preceded the adoption of rule 2-200 and its predecessors; consequently, its analysis did not address the rule-related issues posed here.[8] Finally, because neither the language nor the history of the rule supports an exemption for fee divisions among joint venturers, *Bunn*'s discussion of joint ventures does not help Chambers.

C. *The Effect of Noncompliance with Rule 2-200*

The record shows that on September 29, 1993, Kay wrote a letter notifying Chambers that he was being removed from the *Weeks* case with the

---

[8] *Bunn v. Lucas, Pino & Lucas, supra*, 172 Cal.App.3d 450, is hereby disapproved to the extent it is inconsistent with the views expressed herein.

client's approval. That letter, which noted a "cc" to the client, also confirmed that Chambers would "receive the compensation agreed upon," namely, in the event the *Weeks* case settled before depositions, "16.5% of the attorney's fees called for under my agreement with [the client], which is 40% of the monies recovered"; thereafter, an "increase to 28%" of the fees specified under the agreement with the client; and reimbursement of Chambers's costs.

Even assuming, for purposes of argument, that Kay's letter to Chambers raises a triable issue of material fact regarding satisfaction of rule 2-200's requirement that clients be given full written disclosure of fee divisions, the letter furnishes no basis whatsoever for inferring compliance with the rule's written consent requirement. Notably, nothing in the record contradicts Kay's evidence that no one ever sought or obtained Weeks's oral or written consent to the fee sharing, or suggests that Weeks was even aware of her right of consent. Hence, we now address Chambers's contention that he is entitled to a division of fees obtained in the *Weeks* case despite noncompliance with the rule's written consent requirement.

Rule 2-200 unambiguously directs that a member of the State Bar "*shall not divide a fee for legal services*" unless the rule's written disclosure and consent requirements and its restrictions on the total fee are met. Yet Chambers, in effect, seeks the aid of this court in dividing the fees of a client without satisfaction of the rule's written consent requirement. We decline such aid.

As rule 1-100(A) explains, the Rules of Professional Responsibility "are intended to regulate professional conduct of members of the State Bar through discipline. They have been adopted by the Board of Governors of the State Bar of California and approved by the Supreme Court of California pursuant to Business and Professions Code sections 6076 and 6077 to protect the public and to promote respect and confidence in the legal profession. These rules together with any standards adopted by the Board of Governors pursuant to these rules shall be binding upon all members of the State Bar." (See also Bus. & Prof. Code, § 6077; *General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164, 1181 [32 Cal.Rptr.2d 1, 876 P.2d 487] [attorneys "are bound at all events not to transgress a handful of professional ethical norms that distinguish their work from that of the nonattorney"].)

*Margolin, supra,* 85 Cal.App.4th 891, a case involving a pure referral fee, explained the purpose of rule 2-200's notice and consent requirements as follows: "Just as a client has a right to know how his or her attorney's fees will be determined, he or she also has a right to know the extent of, and the

basis for, the sharing of such fees by attorneys. Knowledge of these matters helps assure the client that he or she will not be charged unwarranted fees just so that the attorney who actually provides the client with representation on the legal matter has 'sufficient compensation' to be able to share fees with the referring attorney. Disclosure of these matters to the client should be in writing because the client should not be expected to mentally retain such information throughout the pendency of the case." (*Margolin, supra,* 85 Cal.App.4th at p. 903.) Moreover, "[r]equiring the client's written consent to fee sharing impresses upon the client the importance of his or her consent, and of the right to reject the fee sharing." (*Ibid.*)[9]

We agree with this statement of rule 2-200's purpose. We further conclude that the rule's written disclosure and consent requirements remain equally important where, as here, the division of fees accompanies or is prompted by a division of the legal services provided to the client. As part of their professional obligations, attorneys are required to "keep a client reasonably informed about significant developments relating to the employment or representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed." (Rule 3-500; see also Bus & Prof. Code, § 6068, subd. (m) [attorneys have a duty "to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services"].) A division of fees may reflect each participating attorney's responsibilities in a case or fees may be charged for multiple attorney participation in the case without regard to the particular services each attorney performs. Such information may affect the client's level of confidence in the attorneys and is indispensable to the client's ability to make an informed decision regarding whether to accept the fee division and whether to retain or discharge a particular attorney. As in the case of referral fees, requiring the client's written consent to fee divisions among participating attorneys impresses on the client the importance of consent and the right to reject a fee division. All in all, Chambers fails to persuade us that the protection afforded by the rule's written consent requirement is any less necessary or beneficial where, as here, attorneys from separate law firms seek to divide both the work and the fees in a particular matter.

---

[9]*Margolin* further observed that "[t]he written disclosure has the additional benefit of ensuring that the attorneys themselves truly agree to the exact terms of the fee-sharing agreement, thus making it less likely that they will have a disagreement between themselves that will lead to litigation or potentially impact the client in a negative manner. Moreover, providing a written disclosure of the fee-sharing agreement makes it less likely that the attorneys will wittingly or unwittingly change the terms of such agreement during the pendency of the case." (*Margolin, supra,* 85 Cal.App.4th at p. 903.) The decision also noted that requiring the client's written consent additionally "benefits the attorneys themselves because it ensures that the client will not later claim there was no consent, and it benefits the referring attorney who has additional proof of the existence of the sharing agreement." (*Ibid.*)

Were we to hold that the fee obtained in *Weeks* may be divided as Chambers and Kay agreed, with no indication that the required client consent was either sought or given, we would, in effect, be both countenancing and contributing to a violation of a rule we formally approved in order "to protect the public and to promote respect and confidence in the legal profession." (Rule 1-100(A), 1st par.; Bus. & Prof. Code, § 6076.) Such a result would be untenable as well as inconsistent with the policy considerations that motivated the adoption of rule 2-200.

Our decision to affirm the importance of written consent is consistent with *Scolinos v. Kolts* (1995) 37 Cal.App.4th 635 [44 Cal.Rptr.2d 31] (*Scolinos*) and *Margolin, supra,* 85 Cal.App.4th 891, which denied recovery for breaches of referral fee agreements where there was no compliance with the disclosure and consent requirements of rule 2-200 and its predecessor, former rule 2-108.

In *Scolinos, supra,* 37 Cal.App.4th 635, the plaintiff attorney sued the defendant attorneys for breach of their oral agreement to pay a referral fee of 33⅓ percent of any attorney fees the defendants received from the referred client. Affirming a summary judgment granted in the defendants' favor, *Scolinos* found the record uncontroverted that the referral agreement was not disclosed and lacked the client's written consent, as former rule 2-108 required. (*Scolinos, supra,* 37 Cal.App.4th at pp. 637, 640.) In holding the agreement unenforceable on public policy grounds, *Scolinos* reasoned that "[i]t would be absurd if an attorney were allowed to enforce an unethical fee agreement through court action, even though the attorney potentially is subject to professional discipline for entering into the agreement." (*Id.* at p. 640.)

In *Margolin, supra,* 85 Cal.App.4th 891, the plaintiff attorneys brought a breach of contract action against the defendant attorney, alleging that he had breached an oral agreement to provide them with 50 percent of the attorney fees received from a referred client. In upholding a directed verdict entered in the defendant's favor, *Margolin* reaffirmed the rule that noncompliance with the written disclosure and written consent requirements of rule 2-200 rendered a fee-sharing agreement unenforceable, even though the defendant there had promised the plaintiffs to facilitate fulfillment of the rule's requirements and even had obtained the client's oral consent to the subject agreement. (*Margolin, supra,* 85 Cal.App.4th at p. 903.) In rejecting application of equitable estoppel principles against the defendant, *Margolin* emphasized that the plaintiffs, as attorneys, were presumed to have known that rule 2-200 requires actual written disclosure and written consent. Because the plaintiffs assumed the risk that the defendant would not keep his promise to

comply with rule 2-200, and because the plaintiffs could have protected themselves by providing the client with the required written fee-sharing disclosure and obtaining her consent, the plaintiffs could establish neither unconscionable injury to themselves nor unjust enrichment of the defendant so as to support application of equitable estoppel. (*Margolin, supra*, 85 Cal.App.4th at pp. 901-902.)

Chambers attempts to distinguish *Scolinos* and *Margolin* on the basis that those decisions involved pure referral fee agreements, while in this case the fee division would be among attorneys who each rendered substantial legal services to the client. Chambers also emphasizes that here, Kay acknowledged the fee-sharing agreement in a letter sent to Chambers and copied to the client. Neither of these circumstances justifies a different result.

Chambers's performance of legal services in the *Weeks* case and Kay's acknowledgement of the fee-sharing agreement are irrelevant in light of rule 2-200's language expressly barring attorneys from dividing *any* fees (except between partners, associates, or shareholders) without the client's written consent. (Rule 2-200(A)(1).) Although Chambers argues that rational reasons exist for allowing a division of fees despite the lack of written client consent, e.g., it would effectuate the intent of the contracting attorneys and would avoid incentives for fraud in the inducement of such contracts, we remain mindful that we adopted the rule to protect the public and to promote respect and confidence in the legal profession. (See rule 1-100(A), 1st par.) Because attorneys who negotiate fee divisions without fulfilling their obligations under rule 2-200 undermine the public's respect and confidence in the legal profession by failing to put the best interests of their clients first, and because attorneys are fully capable of safeguarding their own interests simply by obtaining the requisite client consent, we are not persuaded that Chambers's proffered reasons are sufficient to disregard rule 2-200's command.

Chambers next argues that *Moran v. Harris, supra*, 131 Cal.App.3d 913, *Potter v. Peirce* (Del. 1997) 688 A.2d 894, and *Arya Group, Inc. v. Cher* (2000) 77 Cal.App.4th 610 [91 Cal.Rptr.2d 815] (*Arya Group*) support his contention that the sharing of fees is appropriate under the present circumstances. We disagree.

*Moran v. Harris, supra*, 131 Cal.App.3d 913, held that public policy did not prohibit enforcement of a fee-sharing agreement that was entered in January of 1972 and subsequently assigned in 1973. The issue there was whether that agreement, which involved a referral fee, violated public policy in light of the circumstances that the Rules of Professional Conduct had

banned referral fees in November of 1972 (former rule 22) but eliminated the ban in 1979 (former rule 2-108). We find *Moran v. Harris* unhelpful because in that case the issues of client notification and consent were neither litigated nor addressed.

*Potter v. Peirce, supra,* 688 A.2d 894, which involved a fee-splitting agreement between attorneys from different states, likewise is off the mark. There the Delaware Supreme Court concluded that "a Delaware lawyer may not assert his non-compliance with Delaware Lawyers' Rule of Conduct 1.5(e)[10] as a defense to an agreement with an out-of-state lawyer, not charged with compliance with that rule or a similar rule in his own jurisdiction." (*Potter v. Peirce, supra,* 688 A.2d at p. 897.) In contrast to the situation in *Potter v. Peirce,* both Kay and Chambers are California attorneys bound by rule 2-200's restrictions on the division of fees.

*Arya Group, supra,* 77 Cal.App.4th 610, involved the interpretation of Business and Professions Code section 7164, which requires all contracts for construction of a single-family dwelling to be in writing and signed by both parties. In that case, the appellate court permitted a suit on an oral construction contract to proceed after finding that the Legislature had not intended to void all contracts violating the statutory requirement. The court observed that, while the statute requires construction contracts to be " 'evidenced in writing signed by both parties,' " it does not limit a party's ability to sue. (*Arya Group, supra,* 77 Cal.App.4th at p. 616.) In reaching its conclusion, the court contrasted that statute with Business and Professions Code section 7031, subdivision (a), which specifies that, except as otherwise provided, no unlicensed contractor "may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract" where a license is required. (*Arya Group, supra,* 77 Cal.App.4th at p. 616.) The court deemed significant the absence of any similarly prohibitive language in Business and Professions Code section 7164, for, as exemplified by Business and Professions Code section 7031, subdivision (a), "[t]he Legislature has shown it is perfectly capable of drafting a statute which limits a party's ability to sue, where that is its intent." (*Arya Group, supra,* 77 Cal.App.4th at p. 616.)

Unlike the statute construed in *Arya Group,* rule 2-200, which is binding on all State Bar members, contains language explicitly stating that, unless

---

[10]Delaware Lawyers' Rules of Professional Conduct, rule 1.5(e) provides: "A division of fee between lawyers who are not in the same firm may be made only if: [¶] (1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for representation; [¶] (2) the client is advised of and does not object to the participation of all the lawyers involved; and [¶] (3) the total fee is reasonable." (Quoted in *Potter v. Peirce, supra,* 688 A.2d at p. 896.)

one of three exemptions applies, a member of the State Bar "shall not divide a fee" unless the client consents to the division in writing. If anything, *Arya Group*'s statutory analysis supports, rather than undermines, our conclusion that attorneys such as Chambers are precluded from maintaining an action for a division of fees where the client's written consent was neither sought nor obtained.

Finally, Chambers argues that rule 2-200 should not be deemed to create a new affirmative defense to his otherwise meritorious civil cause of action for breach of contract. To support this contention, Chambers points to the fourth paragraph of rule 1-100(A), which specifies that the Rules of Professional Conduct "are not intended to create new civil causes of action. Nothing in these rules shall be deemed to create, augment, diminish, or eliminate any substantive legal duty of lawyers or the non-disciplinary consequences of violating such a duty."

The fourth paragraph of rule 1-100 does not support Chambers's position. First of all, the paragraph does not apply here because no one is attempting to assert a civil cause of action against Chambers for failure to obtain the requisite written client consent. Nor does anyone contend that the consent requirement creates a substantive legal duty, a breach of which might give rise to recovery. Most important, because this court approved rule 2-200 under legislative authorization (see Bus. & Prof. Code, § 6076), and because the rule binds all members of the State Bar (rule 1-100(A), 1st par.), it would be absurd for this or any other court to aid Chambers in accomplishing a fee division that would violate the rule's explicit requirement of written client consent and would subject Chambers to professional discipline. (See *Scolinos, supra,* 37 Cal.App.4th at p. 640.)

D. *Quantum Meruit Recovery*

After holding that rule 2-200 precluded recovery for breach of the fee-sharing agreement, the Court of Appeal determined that Chambers nonetheless was entitled to recover in quantum meruit for the reasonable value of the legal services he had provided before his discharge from the *Weeks* case.[11] Here, Chambers contends that the Court of Appeal erred in concluding that a quantum meruit award could not be predicated upon an apportionment of the contingent fee.

---

[11]The Court of Appeal also reversed the trial court's ruling that the two-year statute of limitations (Code Civ. Proc., § 339) bars the quantum meruit claim. To the extent Kay argues in his brief that the Court of Appeal decided that issue incorrectly, or contends that Chambers has no right to recover the reasonable costs of services rendered, even under a quantum meruit theory, because of the absence of written client consent to the agreed fee division, he has forfeited the issues by failing to petition for their review.

In particular, Chambers complains of the following passage in the Court of Appeal's opinion: "We agree with [plaintiff] that his quantum meruit cause of action is cognizable, but the award cannot be based upon a division of the contingency fee. An attorney engaged pursuant to a contingent fee agreement and discharged prior to occurrence of the contingency may recover in quantum meruit recovery for the reasonable value of services rendered up to the time of discharge, rather than the full amount of the agreed contingent fee." In Chambers's view, this analysis is partially correct, but only if all of the contingent fee services expected of that attorney have not been rendered at the time of the discharge. According to Chambers, a trial court remains free to award the entire fee provided for in a fee-sharing agreement as a proper quantum meruit determination where, as here, the amount specified in the agreement is based on the understanding that that attorney's services were completed.

In essence, Chambers contends that, notwithstanding the absence of the required written client consent, he should be allowed to accomplish indirectly a division of fees under the guise of a quantum meruit claim. We reject the contention. None of the authorities Chambers identifies addressed quantum meruit recovery in the context of an improper fee division. (*Franklin v. Appel* (1992) 8 Cal.App.4th 875 [10 Cal.Rptr.2d 759] [holding that where attorney fee agreement was not voidable, trial court's error in not awarding damages pursuant to the agreement was nonprejudicial where the court awarded the entire fee to which the attorney was entitled as quantum meruit recovery]; see also *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265 [87 Cal.Rptr.2d 497]; *Spires v. American Bus Lines* (1984) 158 Cal.App.3d 211 [204 Cal.Rptr. 531].) We perceive no legal or policy justification for finding that the fee the parties negotiated without the client's consent furnishes a proper basis for a quantum meruit award in this case.

CONCLUSION AND DISPOSITION

We recognize, as did the Court of Appeal below, that this fee dispute is between attorneys only and that the client is not a party. Nonetheless, rule 2-200 aims to protect clients by requiring, inter alia, the attorney's written disclosure and the client's written consent to nonexempt fee divisions. (*Margolin, supra*, 85 Cal.App.4th at p. 903.) Although Chambers complains that Kay should not be permitted to take advantage of his own disregard of the Rules of Professional Conduct, we are not persuaded that this circumstance justifies or otherwise excuses Chambers's equally disturbing neglect of rule 2-200 and the policy considerations that motivated its adoption. Chambers could have protected his interests, and at the same time fulfilled the beneficial purposes of the rule and acted in Weeks's best interests, by

requesting proof of her written consent to the fee division before committing himself to her case.

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.