[No. B128298. Second Dist., Div. Three. Dec. 21, 2000.]

ELYSE R. MARGOLIN et al., Plaintiffs and Appellants, v.
JOSEPH SHEMARIA et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Gelfand and Gelfand, Gary B. Gelfand and Robert E. Fisher for Plaintiffs and Appellants.

Joseph Shemaria, in pro. per., for Defendants and Appellants.

## OPINION

**CROSKEY, J.**—In this breach of contract suit between two law firms and their attorneys, the plaintiffs have filed an appeal from the judgment entered in favor of defendants. Plaintiffs are Elyse R. Margolin and the law offices of Levin & Margolin (Margolin, or plaintiffs). Defendants are Joseph Shemaria, Joseph Shemaria, a professional corporation, and the Law Offices of Joseph Shemaria (Shemaria). Shemaria has cross-appealed, challenging several sanctions imposed on him by the trial court. His cross-appeal is addressed in the unpublished portion of this opinion.[1]

The contract on which plaintiffs sued concerns a case referral made by plaintiffs to Shemaria. Plaintiffs claim that under the contract, they are entitled to 50 percent of the attorney's fees that Shemaria ultimately received

---

[1]Plaintiffs' notice of appeal was prematurely filed. (Cal. Rules of Court, rule 2(a) & (c).) It was filed on December 14, 1998, and it states plaintiffs are appealing from a judgment entered on October 15, 1998. However, on October 15, 1998, the trial court directed a verdict for Shemaria and ordered him to submit a proposed judgment. The judgment was signed and filed by the court on January 27, 1999. Shemaria's cross-appeal was also filed prematurely (on Jan. 4, 1999). We construe the parties' premature appeals to have been filed after entry of the judgment. (Cal. Rules of Court, rule 2(c).)

for his efforts in the referred case. The trial court rejected plaintiffs' claim and granted Shemaria a directed verdict, finding that plaintiffs do not have a *viable* contract with Shemaria for fee sharing because the contract does not comply with rule 2-200 of the Rules of Professional Conduct of the State Bar of California, which prohibits such sharing of fees unless certain specified conditions are met.[2]

Stated simply, plaintiffs have asked this court to decide whether they have the right to insist that Shemaria violate rule 2-200 (and thereby subject himself to possible disciplinary action by the State Bar of California) so that they can receive the benefit of their bargain with him. We find plaintiffs have no such right. We find the trial court properly applied rule 2-200 when it granted a directed verdict and entered judgment in favor of Shemaria. We further find, as more fully discussed in the unpublished portion of this opinion, that (1) the trial court did not abuse its discretion in imposing its original sanctions on Shemaria, and (2) we have no jurisdiction to review the sanctions it subsequently imposed on Shemaria because Shemaria's notice of appeal has limited our review to the original sanctions. We therefore affirm the judgment in its entirety.

I

## PROCEDURAL BACKGROUND OF THE CASE

Plaintiffs' complaint, filed in January 1998, alleges plaintiffs referred a case to Shemaria in consideration for his oral agreement to (1) provide the referred client with the written disclosure of the referral agreement required

---

[2]The Rules of Professional Conduct of the State Bar of California (the Rules of Professional Conduct; all further references to rules are to these rules) is a code of conduct for members of the State Bar. Such rules are adopted by the Board of Governors of the State Bar and approved by the Supreme Court, at the directive of the Legislature, and when so approved, are binding upon all members of the State Bar. (Bus. & Prof. Code, §§ 6076 & 6077; *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 78 [78 Cal.Rptr.2d 16, 960 P.2d 1046].) An attorney's wilful breach of the rules may result in discipline of the attorney. (Bus. & Prof. Code, § 6077.)

Rule 2-200 of the Rules of Professional Conduct (rule 2-200) states in relevant part: "(A) A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless: [¶] (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and [¶] (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200."

Permitting attorney's fees to be shared promotes referrals by "less capable lawyers to . . . experienced specialists . . . ." (*Moran v. Harris* (1982) 131 Cal.App.3d 913, 922 [182 Cal.Rptr. 519, 28 A.L.R.4th 655].) Thus, the client can benefit from the referral, as can both the experienced attorney, and "the conscientious, but less experienced lawyer [who] is subsidized to competently handle the cases he retains . . . ." (*Ibid.*)

by rule 2-200; (2) obtain the referred client's written acknowledgement and consent to the referral agreement, which is also required by rule 2-200; and (3) provide plaintiffs with 50 percent of any fee received by him in conjunction with his representation of the referred client. Plaintiffs alleged Shemaria breached this oral agreement by failing to accomplish each of these three matters. According to the complaint, Shemaria received $450,000 in fees from the referred client.

Shemaria's general denial to the complaint alleged several affirmative defenses, including a violation by plaintiffs of rule 2-200. The case was tried to a jury in October 1998. The trial court granted Shemaria's motion for a directed verdict because of plaintiffs' failure to satisfy the requirements of rule 2-200.

### ISSUE RAISED IN PLAINTIFFS' APPEAL

In their appeal, plaintiffs contend that rule 2-200 does not prevent them from sharing in the fees recovered by Shemaria from the referred client since (1) evidence at trial showed that the referred client received a full verbal explanation of the referral fee agreement between plaintiffs and Shemaria, and consented thereto, and (2) Shemaria promised Margolin that he would provide the referred client with a written explanation of the fee-sharing agreement and would obtain the client's written consent to that agreement.

### DISCUSSION

1. *Standards of Review of the Trial Court's Directed Verdict Against Plaintiffs on Their Cause of Action for Breach of Contract*

█ Because plaintiffs appeal from a judgment based on a directed verdict in favor of defendant, we view the evidence in the light most favorable to plaintiffs. Conflicts in the evidence are resolved, and inferences from the evidence are drawn, in their favor. If there is substantial evidence to support plaintiffs' claim, *and* if the state of the law also supports that claim, we must reverse the judgment. (*Colbaugh v. Hartline* (1994) 29 Cal.App.4th 1516, 1521 [35 Cal.Rptr.2d 213].) █ Interpretation of statutes and administrative regulations, such as the state's Rules of Professional Conduct for members of the State Bar, receives our independent review on appeal. (*Home Depot, U.S.A., Inc. v. Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1599 [49 Cal.Rptr.2d 302].) █ In the instant case, our analysis of rule 2-200 requires our conclusion that the evidence presented at trial is not sufficient to support plaintiffs' assertion that they are entitled to a share of the fees recovered by Shemaria from the referred client.

## 2. *Factual Basis of Plaintiffs' Breach of Contract Cause of Action*

Plaintiff Margolin testified that approximately 75 percent of her law practice is devoted to dissolution of marriage cases, while the remainder is civil litigation matters. During the course of her discussions with one of her family law clients, Margolin learned of acts committed by the client's husband that Margolin felt might be the basis of a tort suit by the client-wife against the husband, separate from the family law case. Margolin suggested to the wife that the wife have a consultation with Shemaria and retain him to handle the tort matter. Margolin testified she had known Shemaria for more than 20 years, and she believed him to be a competent trial lawyer. Margolin arranged for the wife and herself to meet with Shemaria at Shemaria's office on December 9, 1994. Prior to that meeting, Margolin discussed with Shemaria the facts which she believed would be the basis of the tort case.

Margolin testified that the December 9 meeting lasted several hours. Margolin, the wife, and Shemaria discussed having Shemaria handle the proposed tort case against the husband, and Shemaria agreed to take the case. Margolin and Shemaria agreed that the attorney's fees recovered by him from the tort case would be split equally between themselves. At the meeting, Shemaria agreed to prepare a written disclosure of the referral fee-sharing agreement between himself and Margolin, and a written retainer agreement. Additionally, he agreed to obtain wife's written acknowledgement and consent to the fee-sharing agreement. According to Margolin, the wife was present during these arrangements, and she verbally consented to the fee sharing.

At trial, Shemaria stated that the agreement between himself and Margolin for fee sharing was not a 50-50 arrangement but rather was a one-third and two-thirds arrangement, with Margolin to recover one-third of the fees. In his recollection of the December 9 meeting with the wife and Margolin, the topic of fee sharing was not discussed at that time. However, at his deposition, Shemaria acknowledged that he was to prepare a retainer agreement which would comply with the Rules of Professional Conduct (apparently including rule 2-200).

During his representation of the wife in the tort matter, Shemaria sent a letter to a Mr. Larry Adams, who is the wife's personal representative, and he sent Margolin a copy of the letter. In the letter, Shemaria explained to Mr. Adams that Margolin had referred the tort case to him and that the standard fee-sharing rate for such referrals is 33⅓ percent. He also explained that before he could give Margolin such a share of his fees, he would need to have the wife's written consent to the fee-sharing arrangement because the Rules of Professional Conduct require that this be done. Upon receiving the

copy of Shemaria's letter, Margolin telephoned him. She indicated her concern that he had not obtained the wife's written consent to the fee sharing, and she voiced her objection to his representation that her share of his fees was only to be one-third.

Initially the wife and the husband struck an agreement in both the family law and tort cases, but in the end, the couple reconciled and no written settlement agreement was ever executed. Shemaria testified that after the wife and the husband reconciled he retained an attorney to sue them to recover his fees for the referred case. He stated that his suit for legal fees settled in January 1996 for $450,000. He paid his attorney $100,000 to prosecute that case, plus approximately $20,000 in costs. He stated that he did not give Margolin any of that $450,000.

### 3. *The Scolinos Decision*

Our first opportunity to address issues arising under what is now rule 2-200 was in *Scolinos v. Kolts* (1995) 37 Cal.App.4th 635 [44 Cal.Rptr.2d 31] (*Scolinos*). In that case, the attorney-plaintiff (the plaintiff) sued the attorneys-defendants (the defendants) for breach of contract, alleging the defendants wrongfully failed to give him a referral fee share of the attorney's fees which they received in a case referred to them by the plaintiff. The defendants moved for summary judgment on the basis of former rule 2-108 of the Rules of Professional Conduct, which, like current rule 2-200, provided that attorney's fees could not be shared unless the client consented in writing to the division of fees after a full written disclosure of the terms of the fee-sharing agreement had been made to the client. The defendants asserted that the client that the plaintiff referred to them had not agreed, either orally or in writing, to the sharing of fees with the plaintiff, and indeed had not even been informed of a referral fee agreement.

The plaintiff opposed the motion for summary judgment on the ground the defendants had promised to inform the client of the fee-sharing arrangement and to obtain the client's written consent to it. The defendants objected to this opposition argument, contending it was not a factor in the case because the plaintiff's complaint did not allege the defendants had agreed to be responsible for informing the client of the fee-sharing agreement and obtaining the client's consent to it. The trial court granted summary judgment to the defendants on the ground the fee-sharing agreement was void as against public policy because the disclosure and consent requirements of then rule 2-108 were not complied with.

On appeal, we affirmed the trial court's judgment on that same ground. We rejected the plaintiff's contention that because the defendants had agreed

to inform the client of the fee-sharing agreement and obtain her consent to it, the plaintiff was not equally culpable under then rule 2-108 and was therefore entitled to have the agreement enforced. However, we did not reject the plaintiff's argument on its substantive merits. Rather, we rejected it because its factual components had not been pleaded by the plaintiff in his complaint. We held the defendants were therefore not required to meet that argument to be entitled to a summary judgment.

### 4. *Distinctions Between Scolinos and the Instant Case*

In the instant case, plaintiffs *did* allege in their complaint that Shemaria agreed to (1) provide Margolin's client with the required written disclosure of the fee-sharing agreement between himself and Margolin, and (2) obtain the wife's written consent to such agreement. There was evidence presented at trial to support these allegations, and evidence that Shemaria did not provide and secure the written documents necessary to meet the requirements of rule 2-200 even though he said he would. Thus, the allegations in the complaint and the evidence produced at trial have raised the issue that we declined to address in *Scolinos*. Additionally, plaintiffs presented evidence at trial that the wife was verbally informed of the parties' fee-sharing arrangement and consented to it.[3]

Plaintiffs assert that because of these allegations and this evidence, Shemaria cannot hide behind the requirements of rule 2-200 to justify his having breached his agreement to share fees with Margolin.[4] They assert we can reverse the judgment in the instant case because "[i]n *Scolinos*, the client-protective purposes of [former] Rule 2-108 were clearly not served by the attorneys [whereas] in the instant case, those purposes were served." Plaintiffs also contend that an attorney's word should be as good as his bond and therefore an attorney should be held responsible if he breaks his word in the circumstances presented in this case, namely verbal disclosure to the referred client of the fee-sharing arrangement and her verbal consent thereto, coupled with Shemaria's promise to comply with the requirements of rule 2-200. Otherwise, argue plaintiffs, requiring that rule 2-200 be strictly complied with in the instant circumstances (1) penalizes referring attorneys who give

---

[3]At five places in his appellate brief, Shemaria states that the wife refused to sign a written consent to a fee-sharing arrangement. However, Shemaria does not provide proof of this asserted fact. Rule 15 of the California Rules of Court requires brief writers to support their factual assertions with an "appropriate reference to the record."

[4]Plaintiffs assert that Shemaria not only breached his fee-sharing agreement with Margolin but also violated rule 2-200 by entering into the agreement. However, we find no violation of the rule. Shemaria would have violated rule 2-200 if he had carried out his agreement to share his attorney's fees with Margolin. Rule 2-200 prohibits the actual dividing of a fee without the requisite written disclosure and written consent.

their trust to the attorneys who take client referrals, (2) provides a windfall to the latter attorneys when they breach that trust, and (3) runs contrary to the purposes of rule 2-200 in that the client's wishes (as voiced by her verbal consent to the fee-sharing arrangement) are not carried out.

### 5. *The Effect of the Parties' Failure to Comply with Rule 2-200*

■ We decline to reverse the judgment against plaintiffs. Our decision is based on the Supreme Court's thoughtful analysis in the very analogous circumstances presented in the case of *Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247 [241 Cal.Rptr. 22, 743 P.2d 1279] (*Phillippe*). That case involved the statute of frauds requirement that before a commission or compensation may be paid to a licensed real estate broker for his or her efforts in the buying, selling, or, in some cases, leasing of real property, there must be a written agreement, or some written note or memorandum of the agreement, which is signed by the party to be charged or that party's agent.[5] We find that the considerations addressed in *Phillippe* respecting the need for such a writing are equally applicable to the requirement of rule 2-200 that fee-sharing agreements be both explained to a client *in writing* and consented to by the client *in writing*.

In *Phillippe*, the plaintiff, a licensed real estate broker, asserted the defendant owed him a broker's commission in connection with the defendant's purchase of real property. The court determined the alleged agreement on which the plaintiff sued to recover a broker's commission did not meet the requirements of section 1624 because there was no writing signed by the defendant or the defendant's agent which showed the plaintiff was to act as the defendant's broker for the acquisition of the subject real property. However, the "primary issue before [the court was] whether a licensed real estate broker may assert equitable estoppel against a statute of frauds defense in an action by the broker to recover a real estate commission." (*Phillippe, supra*, 43 Cal.3d at p. 1252.) The court concluded that equitable estoppel was not available to such a broker to avoid the statute of frauds unless the broker could show actual fraud. (*Id.* at pp. 1252, 1264.)

The *Phillippe* court rejected applications of equitable estoppel that are based on a theory of unconscionable injury to the promisee (the real estate

---

[5]California's statute of frauds, Civil Code section 1624 (§ 1624), provides in part that certain "contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent." Included in section 1624's list of such contracts are "agreement[s] authorizing or employing an agent, broker, or any other person to purchase or sell real estate, or to lease real estate for a longer period than one year, or to procure, introduce, or find a purchaser or seller of real estate or a lessee or lessor of real estate where the lease is for a longer period than one year, for compensation or a commission."

broker) or unjust enrichment to the promisor (the buyer or seller of real property, i.e., the broker's principal). The court found that a broker's reliance on an oral contract made invalid by section 1624 is unreasonable in light of the fact that the broker is presumed to know that a written agreement for payment of his fees is required by that statute. The court observed that real estate brokers are required to be licensed, and they obtain their license only after they demonstrate knowledge of laws relating to real estate transactions, such as section 1624. The court found that a broker assumes the risk of relying on an oral agreement and therefore there is no unconscionable injury. (*Phillippe, supra,* 43 Cal.3d at pp. 1260-1262.) The court also held that the mere failure of a principal to pay for a broker's services under an unenforceable oral contract is not unjust enrichment sufficient to give rise to a valid claim of equitable estoppel. (*Id.* at p. 1263.) The court stated that permitting mere nonpayment to constitute unjustment enrichment sufficient to estop the principal from raising the statute of frauds as a defense would "conflict with consistent holdings" in prior cases that licensed brokers are not permitted to circumvent the statute of frauds by claiming broker's fees on a theory of quantum meruit. The purpose of the statute of frauds would be defeated if such a theory of recovery were permitted. (*Id.* at pp. 1263-1264.)

Additionally, the court rejected application of equitable estoppel to situations where the broker's principal promises "to execute the required writing at a later date," saying the broker's reliance on such a promise is not sufficiently reasonable. (*Phillippe, supra,* 43 Cal.3d at p. 1270.) However, the court stated that a broker's reliance on the principal's representation "that the necessary contract has in fact been executed may be reasonable and thus support an action for fraud or the assertion of equitable estoppel. [Citations.]" (*Ibid.,* fn. omitted.) The facts of the case would determine the reasonableness of the broker's reliance. (*Ibid.*)

The *Phillippe* court stated its belief that "the legislative preference for written contracts is stronger than ever before." (*Phillippe, supra,* 43 Cal.3d at p. 1265.) Citing 10 consumer contracts which are required to be in writing, characterizing the list as "brief," and noting "[t]here are other examples too numerous for recitation" (*id.* at pp. 1265-1266), the court stated: "The Legislature has demonstrated with increasing frequency its desire to provide consumers with the security and certainty of written contracts in a wide variety of transactions" (*id.* at p. 1265). The court stated the requirement of a written agreement between a broker and his or her principal "manifests a valid legislative intent to protect real estate buyers and sellers from unfounded claims for brokers' commissions. The statute of frauds also serves a cautionary purpose. By requiring a writing, the statute serves to emphasize to contracting parties the significance of their agreement." (*Id.* at p. 1266.)

The court found that it is "not too much to ask" that a person who has the privilege of earning compensation as a real estate broker comply with the statute. (*Id.* at p. 1267).[6]

The considerations addressed by the *Phillippe* court, and the conclusions which the court drew, are applicable here by analogy. An attorney's clients are consumers of the legal expertise possessed by the attorney, and rule 2-200, like section 1624, protects such clients as consumers. In *Scolinos*, we stated the Rules of Professional Conduct exist "to protect the public and to promote respect and confidence in the legal profession." (*Scolinos, supra,* 37 Cal.App.4th at p. 639.) In that regard, rule 2-200 furthers the Legislature's preference for written consumer agreements.

We find no impediment to our conclusion from the fact that section 1624 is a statute while rule 2-200 is an administrative regulation. Both legislative enactments and administrative regulations can be utilized to further this state's public policy of protecting consumers in the marketplace of goods and services. In *Green v. Ralee Engineering Co., supra,* 19 Cal.4th 66, the court recognized that administrative regulations may express fundamental public policy just as statutes and constitutional provisions do. (*Id.* at pp. 79-82.) And in *General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164, 1189 [32 Cal.Rptr.2d 1, 876 P.2d 487], a wrongful termination action by an in-house counsel, the court had reference to the Rules of Professional Conduct when it spoke of "fundamental public policies reflected in the governing ethical code [for attorneys]."

We therefore conclude that equitable estoppel is not available to plaintiffs to overcome Shemaria's assertion of rule 2-200 as a defense to this lawsuit. We find that plaintiffs' reliance on Shemaria's promise to provide the referred client with a written disclosure of the terms of the fee-sharing agreement between Shemaria and plaintiffs, and to obtain the client's written consent to the fee sharing, was not sufficiently reasonable to afford plaintiffs relief from the requirements of rule 2-200. Plaintiffs, as attorneys, are presumed to have known that rule 2-200 requires actual written disclosure and written consent, not a promise by the receiving attorney to provide that disclosure and secure that consent. Plaintiffs assumed the risk that Shemaria would not keep his promise to comply with rule 2-200. Therefore, there is no *unconscionable* injury to plaintiffs. Moreover, Shemaria's failure to share his

---

[6]The defendant buyer of real estate in *Phillippe* was also a licensed real estate broker. The *Phillippe* court did not find this a material factor in its analysis. The court stated: "We perceive no logical reason why a licensed broker or agent who is acting as a seller or purchaser of real property should not be entitled to [the] protection [of section 1624]. Licensees are as subject to false claims as are unlicensed members of the public." (*Phillippe, supra,* 43 Cal.3d at p.1257, fn. omitted.)

fees under the fee-sharing agreement does not constitute his *unjust* enrichment sufficient to support application of the doctrine of equitable estoppel, since rule 2-200 exists for the benefit of clients. Plaintiffs could have protected themselves by providing wife with the required written fee-sharing disclosure and obtaining her written consent.

Moreover, we do not find that the potential for professional discipline of plaintiffs by the State Bar is a reasonable alternative to denying them the benefit of their fee-sharing agreement with Shemaria. If we were to enforce that agreement on the basis that plaintiffs' failure to comply with rule 2-200 is sufficiently addressed by the prospect of such disciplinary proceedings, we would be ignoring the reason for having rule 2-200 in the first place—protection of the consumer. It is not inconceivable that attorneys would choose to subject themselves to potential discipline for failure to comply with rule 2-200, rather than going to the trouble of complying with the rule, if they knew that their noncompliance would not result in denial of the benefits of their fee-sharing arrangements. This would thwart the focus and the object of rule 2-200, which is *consumer* protection, *not* attorney protection. The consumer protection comes from the attorney's written disclosure and the client's written consent, just as the consumer protection for clients of licensed real estate brokers comes from the necessity of having a written contract for broker's fees.

While neither rule 2-200 nor section 1624 specifies a remedy for failure to comply with it, *Phillippe* makes it clear that a broker's failure to comply with section 1624 results in denial of the commission claimed by the broker. The *Phillippe* court's stated purpose of such denial is consumer protection. Our purpose in denying plaintiffs relief in this case is the same.

We also reject plaintiffs' assertion that Shemaria's oral promises to Margolin to provide wife with the rule 2-200 written disclosure and obtain wife's written consent to the fee sharing are "in addition to, and severable from, the referral-fee agreement" and therefore "[i]f the referral-fee agreement is unenforceable because Shemaria breached his oral [promises to Margolin], then [Margolin's] loss of recovery under the referral-fee agreement is a direct result of that breach [and] the breach [itself] should be actionable." Plaintiffs contend this court's opinion in *Scolinos* "suggests the enforceability of such . . . oral [promises made by Shemaria to Margolin]." However, what the *Scolinos* opinion actually did was to utilize the characterization of these types of promises that the plaintiff in that case applied to them, namely, "an exception to the general rule of unenforceability." (*Scolinos, supra,* 37 Cal.App.4th at p. 640.) In other words, the plaintiff in *Scolinos* did not argue that the oral promises made by the defendant were

separately enforceable, but rather that they provided a reason for not applying then rule 2-108 to prevent the sharing of the attorney's fees. (*Scolinos, supra,* 37 Cal.App.4th at p. 640.) We, of course, have just rejected such an argument. Moreover, if the fee-sharing agreement between Margolin and Shemaria is not otherwise enforceable for lack of compliance with rule 2-200, it would be an affront to that rule to permit plaintiffs to recover such fees on the basis that Shemaria breached his promises to Margolin to see to the rule's requirements. The fees would be shared despite the absence of compliance with the rule. Such a result is untenable.

Just as a client has a right to know how his or her attorney's fees will be determined, he or she also has a right to know the extent of, and the basis for, the sharing of such fees by attorneys. Knowledge of these matters helps assure the client that he or she will not be charged unwarranted fees just so that the attorney who actually provides the client with representation on the legal matter has "sufficient compensation" to be able to share fees with the referring attorney. Disclosure of these matters to the client should be in writing because the client should not be expected to mentally retain such information throughout the pendency of the case. The written disclosure has the additional benefit of ensuring that the attorneys themselves truly agree to the exact terms of the fee-sharing agreement, thus making it less likely that they will have a disagreement between themselves that will lead to litigation or potentially impact the client in a negative manner. Moreover, providing a written disclosure of the fee-sharing agreement makes it less likely that the attorneys will wittingly or unwittingly change the terms of such agreement during the pendency of the case.

Requiring the client's written consent to fee sharing impresses on the client the importance of his or her consent, and of the right to reject the fee sharing. Additionally, it benefits the attorneys themselves because it ensures that the client will not later claim there was no consent, and it benefits the referring attorney who has additional proof of the existence of the sharing agreement.

In sum, the policy considerations which caused rule 2-200 to be enacted *for the benefit of the public* also require that the fee-sharing agreement between plaintiffs and Shemaria not be enforced by a court of law.[7]

---

[7]By this opinion, we do not decide whether we would refuse to apply the doctrine of equitable estoppel in a situation where the attorney seeking to enforce a fee-sharing agreement that does not comply with rule 2-200 is the attorney *to whom* the case was referred, since such an attorney would be the one that did most or all the work on the case and reliance on the assurances of referring counsel (who necessarily has the original client relationship) might well be reasonable.

## II

### SHEMARIA'S CROSS-APPEAL*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### DISPOSITION

The judgment against plaintiffs is affirmed. The September 11, 1998 order imposing sanctions on Shemaria is affirmed. All parties to bear their own costs on appeal.

Klein, P. J., and Kitching, J, concurred.

---

*See footnote, *ante*, page 891.