Filed 5/1313  Ramon Canyon Assocs. v. Cunningham CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAMON CANYON ASSOCIATES, | |
| Plaintiff and Appellant, | G046568 |
| v. | (Super. Ct. No. 30-2010-00354568) |
| TODD S. CUNNINGHAM, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment and orders of the Superior Court of Orange County, Luis A. Rodriguez, Judge.  Affirmed.

Lee G. Werner; Mohammed K. Ghods and William Stahr, for Plaintiff and Appellant.

Strickroth & Parker, Michael J. Strickroth and Margaret M. Parker, for Defendant and Respondent.

## INTRODUCTION

The lawsuit underlying this appeal was brought by Ramon Canyon Associates, L.P., a limited partnership, against Todd Cunningham. Ramon Canyon sued Cunningham for fraud, breach of contract, and breach of fiduciary duty. After the parties had rested, the trial court granted Cunningham's motion for nonsuit on fraud and directed a verdict on breach of fiduciary duty. The jury returned a defense verdict on the breach of contract claim, the sole cause of action submitted to it.

Ramon Canyon appeals from the nonsuit and the directed verdict. It also disagrees with the special verdict approved by the trial court. Finally, Ramon Canyon appeals from the denial of its motion for new trial.

We affirm. The nonsuit and directed verdict motions were properly granted; Ramon Canyon did not present the evidence necessary to support the fraud or breach of fiduciary duty claims. As to the special verdict, the court properly overruled the objection Ramon Canyon made at trial; the objection to the verdict it is making on appeal was not made in the trial court. Finally, although the trial court erroneously denied the new trial motion as untimely, the motion was, in fact, properly denied.

## FACTS

Appellant Ramon Canyon Associates develops service station properties. Ramon Canyon's general partner is CRD Interests, Inc., a corporation wholly owned by Michael Geyer, who testified for Ramon Canyon at trial. In May 2005, Ramon Canyon sold a car wash, and Geyer was looking to avoid paying taxes on a gain of $940,000 by making a "1031 exchange."[1]

Cunningham is a real estate developer. He operates his business mainly through limited liability companies. Each development project prompts the formation of

---

[1] A 1031 exchange refers to the nonrecognition of gain or loss on certain kinds of property if the property is exchanged for other property of "like kind," as provided in the Internal Revenue Code, 26 U.S.C.S. § 1031. The exchange must conform strictly to the Internal Revenue Service rules, including some fairly short time limits.

a separate limited liability company, in which one of Cunningham's other entities and, generally, a financial partner participate. The limited liability company involved in this case is Wynfield, LLC.

Geyer contacted Cunningham, whom he had known for many years and with whom he had done business once before, to see whether Cunningham knew of any suitable properties for a 1031 exchange. As it happened, Wynfield, LLC, one of Cunningham's real estate limited liability companies, was developing a housing tract in Murrieta. In mid-2005, Geyer arranged for Ramon Canyon to exchange the money from the car wash sale for two of the four model homes in that tract.[2] Ramon Canyon paid just over $1 million for one house and approximately $1.2 million for the other. Wynfield, LLC, then leased the homes from Ramon Canyon to use as sales offices for the development. At first there was a written lease, but after the lease expired, one of the Cunningham entities continued to pay Ramon Canyon as a month-to-month tenant. Cunningham anticipated that the project would be sold out by early 2007.

Although the houses in the development had sold well during the first two years, Cunningham began to see a change in the market in late 2006/early 2007. By September 2007, there were already some foreclosures in the Wynfield tract. By March 2008, the foreclosures were dragging down the prices of the remaining homes.

Wynfield, LLC, sold the last homes in the development in 2008. It did not sell Ramon Canyon's two model homes or offer them for sale. Ramon Canyon received its last rent check in April 2008, and Geyer was given to understand that the houses were now his to deal with. After unsuccessfully trying to sell the houses, Ramon Canyon found tenants for them in November 2008. At the time of trial, Ramon Canyon was leasing out the houses.

---

[2]    Ramon Canyon did not have enough cash from the car wash sale to pay the entire purchase price, so it financed the rest.

The lawsuit centers on what kind of deal Ramon Canyon had with Cunningham. Geyer insisted that the deal was a partnership. Ramon Canyon would buy the two houses, which Wynfield, LLC, would lease to use as offices while the sales were taking place in the tract. The models would be sold when the project was completed, with the partners participating in either the profit or the loss on the sales. Cunningham testified there was no partnership and no such deal. Ramon Canyon bought the houses, and Wynfield, LLC, leased them to use during the sales period. Wynfield, LLC, would sell the model homes if Ramon Canyon asked it to do so after the leases expired, but it was expecting to be paid something when the houses sold, to compensate it for using its resources to maintain and market the properties.[3] Any losses were Ramon Canyon's problem.

Ramon Canyon sued Cunningham, Wynfield, LLC, and Wynfield III, LLC,[4] for breach of contract, breach of fiduciary duty, fraudulent promise, and negligent misrepresentation. The entity defendants were dismissed after the court granted their motion for summary judgment.

The case was tried to a jury over six days. At the close of evidence, the court granted a nonsuit as to the promissory fraud and negligent misrepresentation causes of action and a directed verdict on the breach of fiduciary cause of action. The breach of contract cause of action went to the jury, which returned a defense verdict. Judgment was entered on December 29, 2011.

---

[3] The leases made Wynfield, LLC, responsible for all the expenses associated with the houses except for the mortgage payments.

[4] There were two Wynfield developments in Murrieta, in close proximity to each other. Wynfield, LLC, owned the houses bought by Ramon Canyon. The other project in Murrieta was owned by Wynfield III, LLC. This was a separate project involving different entities. Because of the housing crash and some significant unanticipated costs to develop the property, the Wynfield III project did not go forward.

Ramon Canyon made a motion for a new trial. The trial court erroneously denied the motion as untimely.[5] The court later realized its mistake, vacated its initial order, and purported to rule on the merits of the motion, but by then the 60-day time limit of Code of Civil Procedure section 660 had expired.[6]

Ramon Canyon appeals from the orders granting the directed verdict and the nonsuit. It also appeals from the denial of its motion for new trial and from the use of a special verdict it asserts confused the jury.

## DISCUSSION

### I.     Nonsuit and Directed Verdict

Code of Civil Procedure section 581c, subdivision (a) permits a defendant to make a motion for nonsuit after the plaintiff has completed its opening statement or after it has presented its evidence to the jury. Code of Civil Procedure section 630, subdivision (a), permits any party to move for a directed verdict after all parties have presented their evidence to the jury. The criteria for deciding these motions are the same. The court may not weigh the evidence or consider the credibility of witnesses. Evidence favoring the non-moving party must be accepted as true, all inferences must be drawn in the non-moving party's favor, and conflicting evidence must be disregarded. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 [nonsuit]; *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1119 [directed verdict].) A mere "'scintilla'" of evidence is not enough to defeat the motion, however. The non-moving party must have presented substantial evidence to create a conflict for the jury's resolution. (*Nally v. Grace Community Church, supra,* 47 Cal.3d at p. 291, quoting 2 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 410, p. 413; *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 263 [same standard for nonsuit and directed verdict].)

---

[5]     The trial court computed the time for filing the notice of motion from the date judgment was entered, rather than the date on which notice of entry of judgment was served. (See Code Civ. Proc., § 657, subd. (a)(2).)

[6]     The notice of appeal had also been filed by that time.

On appeal from a nonsuit, we independently review the order, "evaluating the evidence in the light most favorable to the plaintiff and resolving all presumptions, inferences and doubts in his or her favor. [Citations.] 'Although a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture, reversal is warranted if there is "some substance to plaintiff's evidence upon which reasonable minds could differ. . . ."' [Citation.] In other words, '[i]f there is substantial evidence to support [the plaintiff's] claim, and if the state of the law also supports the claim, we must reverse the judgment.' [Citation.]" (*Wolf v. Walt Disney Pictures & Television, supra,* 162 Cal.App.4th at pp. 1124-1125; see also *Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler* (2012) 212 Cal.App.4th 172, 179.) We use the same method to review an order granting a directed verdict. (*Margolin v. Shemaria* (2000) 85 Cal.App.4th 891, 895.)

### A.    Promissory Fraud

The elements of promissory fraud are a promise made without any intention of performing it; intent to induce reliance; justifiable reliance; and resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; see also Civ. Code, § 1710, subd. (4).) Mere failure to perform is not sufficient to establish promissory fraud. (*Tenzer v. Superscope* (1985) 39 Cal.3d 18, 30.)

The court granted the nonsuit on fraudulent promise in part because of the lack of any evidence of intent not to perform. We agree with the trial court. Even assuming that Ramon Canyon and Cunningham had entered into an agreement to share profits and losses when the model homes were sold, Ramon Canyon presented no evidence to establish Cunningham's intent not to perform at the time he entered into the agreement. The overwhelming evidence showed that the event precipitating the abandonment of Ramon Canyon's model homes was the housing market's crash, which occurred two to three years after the purported agreement. Ramon Canyon presented no

6

evidence to establish any sinister intent on Cunningham's part at the time Ramon Canyon bought the homes in 2005.

### B. Negligent Misrepresentation

Negligent misrepresentation is a form of deceit that does not require intent to deceive, an indispensible element of other kinds of fraud. (*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.* (2006) 144 Cal.App.4th 1175, 1184.) Negligent misrepresentation is "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." (Civ. Code, § 1710, subd. (2).) To state a cause of action for negligent misrepresentation, a plaintiff must still allege facts establishing the other elements of fraud: a false statement of fact, justifiable reliance, and resulting damages. (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 181.) Moreover, the false statement must be one of a past or existing material fact; not a promise or a prediction of something to happen in the future. (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158.) And the defendant must make a "'positive assertion'"; an implied assertion is not good enough. (*Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 306, quoting Civ. Code, § 1572, subd. (2).)

The same insufficiencies in the evidence of fraudulent promise are present here. Ramon Canyon presented no evidence of an untrue statement of past or existing facts made without a reasonable ground for believing it to be true when the homes were purchased or at any other time. It also presented no evidence of reliance on any such untrue statement. The motion for nonsuit was correctly granted on the negligent misrepresentation claim.

### C. Breach of Fiduciary Duty

Whether Cunningham breached a fiduciary duty depends first of all on whether he was Ramon Canyon's partner. The California Revised Uniform Partnership Act defines a partnership as "an association of two or more persons to carry on as

7

coowners a business for profit . . . ." (Corp. Code, § 16101, subd. (9).)[7] A partner unquestionably owes a fiduciary duty to both the partnership and the other partners. (Corp. Code, § 16404.) Although it is not necessary for a partnership to involve sharing profits (*Holmes v. Lerner* (1999) 74 Cal.App.4th 442, 453-454), a person receiving a share of the profits of a business is presumed to be a partner. (Corp. Code, § 16202, subd. (c)(2).) The question therefore becomes whether the court could direct a verdict for the defendant on the issue of the existence of a partnership.

We conclude the court properly directed a verdict on this issue. Ramon Canyon presented no evidence of any business of which it and Cunningham were co-owners. Ramon Canyon's evidence showed that it acquired two houses by means of a 1031 exchange and leased them to Wynfield, LLC, to use in marketing the homes in the Murrieta project. Neither Cunningham nor any of his entities shared ownership of the houses with Ramon Canyon after the sale. Ramon Canyon was not involved in selling homes, which was Wynfield, LLC's business. Similarly, Cunningham was not involved in Ramon Canyon's gas station or car wash enterprises. Geyer testified that when the houses would be sold was entirely up to Cunningham. There was no business in which both Cunningham and Ramon Canyon could participate as coowners. (See *Spier v. Lang* (1935) 4 Cal.2d 711, 716 [joint participation in conduct of business essential element of partnership].)

The sole connection between Ramon Canyon and Cunningham was that Ramon Canyon owned two houses leased to one of Cunningham's entities. Ramon Canyon was Wynfield, LLC's landlord, not Cunningham's partner.

## II.   Special Verdict

The trial court used a modified form of CACI's special verdict form 303 – Breach of Contract – Contract Formation at Issue. The first question of the CACI special

---

7       A partnership agreement may be written, oral, or implied. (Corp. Code, § 16101, subd. (10).)

verdict form states, "Were the contract terms clear enough so that the parties could understand what each was required to do?" The special verdict form used at trial modified the CACI form to insert the names of the parties and made some minor alterations: "Were the terms to the disputed oral contract clear enough so that Ramon Canyon Associates, LP, and Todd Cunningham, an individual, could understand what each was required to do?"[8]

Apparently the court and counsel first discussed jury instructions and the special verdict form in chambers, which discussion was not recorded. On the record the court stated, "With regard to the verdict form, the court will use and find appropriate applicable [*sic*] –as disputed – contested issue of disputed fact; specifically, the use of special verdict 303, as set forth in CACI, and which addresses an issue of contract formation as to the jury." The court then invited Ramon Canyon's counsel to put the objections he had made in chambers on the record.

Counsel stated, first, that he had asked for a general verdict, which request the court had denied. "Then the plaintiff also objected to the modifications of – I believe it's verdict form – special verdict form 303. [¶] So plaintiff would submit that to simplify it, rather than specifying the parties, if the instruction – if the verdict form 303 is going to be used, that it should be used as written." Counsel and the court then engaged in a lengthy discussion about the wording of later questions in the form, a discussion evidently caused by a mistake in transcribing from the CACI book. This transcription error was corrected before the verdict form went to the jury.

On appeal, Ramon Canyon argues that form 303 confused the jury and that the form applies only "to those cases with factual issues involving a written contract with ambiguous disputed performance terms . . . ." Ramon Canyon then argues that there was no evidence to support a contention that Cunningham did not know what he was

---

[8]     The jury answered this question "no" and proceeded no further.

9

supposed to do under the contract.  Finally, Ramon Canyon asserts it objected to the use of the modified verdict form.

It is well settled that a party must object to a verdict form in order to preserve the issue on appeal.  (*Lynch v. Birdwell* (1955) 44 Cal.2d 839, 851; *Fransen v. Washington* (1964) 229 Cal.App.2d 570, 574.)  In this case, the only objection Ramon Canyon made to the special verdict at trial was to the substitution of the names of the parties for the word "parties" in the form from the book.  It did not object on the ground the verdict form was limited to written contracts.  It also did not object on the ground later questions were confusing; the discussion about questions 4, 5, and 6 on the form in front of the court were based on a mistake in transcription that was corrected.  And, in any event, the jury did not answer questions 4, 5, and 6 on the verdict form, so if the questions confused it, the confusion could not have affected the outcome.

Whether a contract to share profits and losses was formed was hotly contested at trial.  Indeed, by the time the case reached the jury, it was the fundamental question.  We cannot see how inserting the names of the parties could have confused anyone, and we conclude the court correctly overruled Ramon Canyon's objection to substituting the names of the parties for "parties" in special verdict form 303.

**III.        Motion for New Trial**

Code of Civil Procedure section 660 provides in pertinent part, "If such motion [for new trial] is not determined within said period of 60 days, . . . the effect shall be a denial of the motion without further order of the court."  The court vacated its first, erroneous, order regarding Ramon Canyon's motion for new trial, but by that time its power to determine the motion had expired.  The effect is therefore a denial of the motion without further order of the court. (See also *Wenzoski v. Central Banking System, Inc.* (1987) 43 Cal.3d 539, 542 [order granting or denying motion for new trial exhausts court's jurisdiction].)

10

We review an order denying a motion for a new trial for abuse of discretion, examining the entire record to assess independently whether the motion should have been granted. (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 832.) A trial court may grant a new trial for insufficient evidence or inadequate damages only when, "after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that . . . the jury clearly should have reached a different verdict . . . ." (Code Civ. Proc., § 657.)

The grounds upon which Ramon Canyon moved for a new trial are the same as those upon which it appealed – the granting of the nonsuit or directed verdict and the use of the special verdict. It also moved for new trial on substantial evidence grounds. (Code Civ. Proc., § 657, subd. (6).)

We have already subjected the nonsuit/directed verdict issue to a comprehensive review of the record, and we do not find any error in denying a motion for new trial on these grounds. After reviewing the record with respect to the special verdict, we conclude the only objection Ramon Canyon made in the trial court was properly overruled. Finally, we do not think the trial court should have granted a new trial on the basis of insufficient evidence to support the verdict. Geyer's testimony regarding contract formation was candid but weak. At one point, he acknowledged that he was not sure Cunningham heard him when Geyer asserted they would share both the profits and losses on the sale of the model homes.[9] At another point he told the jury he did not know

---

[9]  "[Geyer]: On the profits and losses there was an agreement.
"[Defense counsel]: And how do you know that?
"[¶] . . . [¶]
"[Geyer]: I knew it because when he [Cunningham] came out after we'd talked about selling the houses and he said for, you know, putting this deal together or whatever, that may not be his term, whatever it is.
"You're asking me my recollection and it still keeps going the same thing that at the end when he said to do that and I said yeah, that's okay, that sounds fine but if you're going to take part of the profits and losses – profits, excuse me, you're going to take the losses too.
"[Defense counsel:] And did he [Cunningham] ever say I agree?
"[Geyer]: As I had said once before, I do not recall if he said specifically that.
"[Defense counsel]: In fact, you're not really sure if he actually heard you; you're assuming that as well, are you not?

11

who Ramon Canyon's partner was.  The lack of any formal documentation for a partnership involving over $2 million in assets is also hard to get around.  When coupled with Cunningham's testimony, the evidence to support a defense verdict was clearly sufficient.

## DISPOSITION

The judgment is affirmed.  Respondents are to recover their costs on appeal.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.

---

"[Geyer:]  You know, I don't know.  Maybe he didn't.  As I say, he didn't respond back and I've said that.  I was standing there within a few feet of each other.  I don't remember specifically.
"As I say I do not believe there was a response or at least there was not a response that I heard from him."