Filed 3/24/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| ROBERT K. REEVE, | |
| Plaintiff and Respondent, | C085867 |
| v. | (Super. Ct. No. STK-CV-UBC-2014-0012368) |
| KENNETH N. MELEYCO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Barbara A. Kronlund, Judge.  Reversed.

Esner, Chang & Boyer, Holly N. Boyer and Shea S. Murphy for Defendant and Appellant.

Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Plaintiff and Respondent.

1

Attorney Robert Reeve sued attorney Kenneth Meleyco to enforce a referral fee agreement after Reeve referred a client to Meleyco but Meleyco did not pay the referral fee. A jury found that Reeve was entitled to recover for breach of contract and also under a quantum meruit theory, and the trial court awarded Reeve prejudgment interest. Meleyco appeals, arguing among other things that Reeve cannot recover for breach of contract because the client did not provide written consent to the arrangement, the quantum meruit claim is barred by the applicable statute of limitations, and Reeve is not entitled to prejudgment interest.

Former rule 2-200 of the State Bar Rules of Professional Conduct (former rule 2-200) was in effect during the relevant time period. It required an attorney to obtain written consent from the client before sharing a fee, and case precedent renders unenforceable as against public policy any attorney fee sharing agreement if the client did not give informed, written consent consistent with former rule 2-200. In this case, Meleyco wrote a letter to the client explaining that the referral fee would not come from the client's percentage of any settlement, and the client signed an acknowledgement at the bottom of the letter indicating that he received the letter and understood its contents. The client subsequently testified that his acknowledgement expressed his agreement that the referral fee could be paid to Reeve.

We conclude the client's written acknowledgement that he received and understood the letter did not constitute written consent to the referral fee agreement under former rule 2-200, and the client's subsequent testimony did not remedy the deficiency. The referral fee agreement is unenforceable as against public policy and Reeve cannot recover for breach of contract.

In addition, we agree with Meleyco that Reeve's quantum meruit claim is barred by the two-year limitations period.

Because Reeve cannot recover on the referral fee agreement, the award of prejudgment interest must be reversed, and we need not address Meleyco's additional arguments.

We will reverse the judgment and remand the matter for entry of judgment in favor of Meleyco.

BACKGROUND

The underlying case resulted from a traffic accident in which James Luoma's wife died and his daughter was seriously injured. Luoma contacted his friend Reeve about representation, and Reeve referred Luoma to Meleyco. Reeve and Luoma met with Meleyco and the three individuals discussed a referral fee that Meleyco would pay to Reeve. Luoma and Meleyco entered into a contingency fee agreement in which Luoma agreed that Meleyco would earn a contingency fee of 35 percent of any settlement or judgment in favor of Luoma and his daughter, but the contingency fee agreement did not mention a referral fee for Reeve.

Although Reeve performed some tasks relating to Luoma's case, Luoma began to push back at Reeve's further involvement and worried that Reeve's referral fee would come out of Luoma's part of the judgment or settlement and not out of Meleyco's fee. Eventually, Luoma complained to Meleyco about Reeve's involvement, and Meleyco sent Reeve a letter stating: "This letter is to confirm our agreement . . . that your referral fee will be 25 percent of my fee, and further that your involvement in the case will be when I request it due to our client's position regarding your involvement." The letter did not indicate that a copy was sent to Luoma. After Reeve received this letter, his participation in the case ended except for responding to a couple of questions.

On September 20, 2007, Meleyco received a letter from Luoma, stating: "[A]s you know any referral agreement made by you and Robert Reeve in this case was made without my knowledge." Meleyco responded on September 21, 2007: "[T]his letter is to assure you that the twenty-five percent (25%) referral fee that I am paying to Bob Reeve

3

will come out of my fee and will not increase the fees to either you or your daughter." At the bottom of the letter was typed: "I, JAMES G. LUOMA, acknowledge receipt of this letter and understand the contents." Luoma signed this acknowledgement. Luoma testified at trial in 2017 concerning his signature on the September 21, 2007 letter. Counsel for Reeve asked Luoma: "Is your signature here agreeing that the 25 percent referral fee can be paid to [Reeve] if it will not increase the fees to either you or your daughter?" Luoma responded, "Yes." Luoma also testified that he had conversations with Meleyco about the referral fee in September 2007.

Meleyco represented Luoma and his daughter in a 2007 mediation with Penske Truck Leasing where a settlement was reached totaling $3,375,000. When Meleyco prepared to distribute the funds, Luoma was dissatisfied with the low amount of cash he would receive because of funds dedicated to attorney fees, costs, and annuities. The proposed attorney fees included a referral fee of $177,187.50 to Reeve, and the amount dedicated to annuities for Luoma was more than $1 million. To give Luoma more cash from the settlement, Meleyco and Luoma agreed that Reeve's referral fee would be reduced to $20,000. Meleyco sent Reeve a check for $20,000, indicating it was a referral fee amount that Luoma deemed appropriate. The referral fee to Reeve for the Penske settlement is not at issue here because the jury found the limitations period had run on an action by Reeve for the Penske settlement referral fee.

However, in 2011, Meleyco represented Luoma and his daughter in a settlement with the State of California. The settlement totaled $900,000 and was split equally between Luoma and his daughter. Meleyco prepared, and Luoma signed, a disbursement sheet that included $180,000 in attorney fees to Meleyco but did not mention a referral fee to Reeve. The money from the settlement was disbursed according to the disbursement sheet.

On December 3, 2014, Reeve filed a complaint against Meleyco for breach of contract based on the referral fee agreement, and Reeve later amended the complaint

4

twice to include causes of action for breach of contract, quantum meruit, and promissory estoppel. In a bifurcated trial on the preliminary issue of the statute of limitations, the jury reached a special verdict, concluding that the limitations period had expired on the referral fee for the 2007 Penske settlement but had not expired for the 2011 State of California settlement.

The trial continued on the issue of Meleyco's liability to Reeve resulting from the 2011 State of California settlement, and the jury reached a verdict in favor of Reeve for $78,750, based on both the breach of contract and the quantum meruit causes of action. On Reeve's motion, the trial court awarded Reeve $49,364.35 in prejudgment interest.

Meleyco filed a motion for new trial or for judgment notwithstanding the verdict, and the trial court denied the motion.

DISCUSSION

I

Meleyco argues Reeve cannot recover for breach of contract because Luoma did not provide written consent for the referral fee agreement.

As a preliminary matter, Reeve counters that Meleyco forfeited his contention by failing to provide a fair and accurate summary of the evidence. (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739, 745.) We disagree. As to the evidence material to our review, Meleyco provided an adequate and appropriate summary of the evidence.

We therefore turn to Meleyco's arguments. Former rule 2-200(A) provided in pertinent part: "A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless: [¶] . . . [t]he client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division . . . ." This rule was superseded by rule 1.5.1 of the State Bar Rules of Professional Conduct operative

5

November 1, 2018.[1]  All events pertaining to this case occurred while former rule 2-200 was in force.

A fee-sharing agreement between attorneys is unenforceable as against public policy if the client did not give informed, written consent to the fee-sharing agreement. (*Chambers v. Kay* (2002) 29 Cal.4th 142, 147-161.)  In *Chambers*, the California Supreme Court denied recovery under a breach of contract theory to an attorney seeking to enforce a fee-sharing agreement because there was no compliance with the written disclosure and consent requirements of former rule 2-200.  (*Chambers*, at pp. 147-161.) In so deciding, the court held an attorney can protect his or her interests, and at the same time fulfill the beneficial purposes of the rule, acting in the client's best interests, by requesting proof of the client's written consent to the fee division.  (*Id*. at pp. 162-163.) Former rule 2-200 protected the public and promoted confidence in the legal profession. (*Chambers*, at p. 158.)  *Chambers* and other precedent "uniformly recognize that an attorney cannot enforce a fee-sharing agreement if that attorney could have obtained written client consent as required by [former] rule 2-200, but failed to do so."  (*Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler* (2012) 212 Cal.App.4th 172, 181.)

Oral consent by the client to the fee-sharing agreement is not sufficient to satisfy former rule 2-200.  (*Margolin v. Shemaria* (2000) 85 Cal.App.4th 891, 896, 899-903.) "Requiring the client's written consent to fee sharing impresses on the client the importance of his or her consent, and of the right to reject the fee sharing.  Additionally, it benefits the attorneys themselves because it ensures that the client will not later claim

---

[1]  Under current rule 1.5.1 of the State Bar Rules of Professional Conduct (superseding former rule 2-200 as of November 1, 2018), the client-consent element of a fee sharing agreement requires that "the client has consented in writing, either at the time the lawyers enter into the agreement to divide the fee or as soon thereafter as reasonably practicable, after a full written disclosure to the client of:  (i) the fact that a division of fees will be made; (ii) the identity of the lawyers or law firms that are parties to the division; and (iii) the terms of the division."  (Rules Prof. Conduct, rule 1.5.1(a)(2).)

there was no consent, and it benefits the referring attorney who has additional proof of the existence of the sharing agreement." (*Id*. at p. 903.)

Here, there was a writing disclosing that a division of fees would be made and providing certain terms of the division. The writing was Meleyco's letter informing Luoma "that the twenty-five percent (25%) referral fee that I am paying to Bob Reeve will come out of my fee and will not increase the fees to either you or your daughter." In addition, the client signed the writing. Luoma signed a pretyped acknowledgement stating: "I, JAMES G. LUOMA, acknowledge receipt of this letter and understand the contents." In signing the acknowledgment, Luoma merely confirmed that he received the writing and that he understood what it said. Thus, even if the letter sufficiently disclosed that a division of fees would be made and also sufficiently disclosed the terms of the division -- questions we do not decide -- Luoma did not provide his written consent to the referral fee agreement.

Consent is different from disclosure or receipt, and it is also different from understanding. Disclosure is the "action of making something openly known . . . ." (Oxford English Dict. <https://oed.com/view/Entry/53779?redirectedFrom =disclosure#eid> [as of Mar. 18, 2020].) Receipt refers to "[s]omething received . . . ." (*Id*. at <https://oed.com/view/Entry/159401?rskey=22A4rt&result =1&isAdvanced=false#eid> [as of Mar. 18, 2020].) Understanding is "[t]o comprehend; to apprehend the meaning or import of; to grasp the idea of." (*Id*. at <https://oed.com/ view/Entry/212085?rskey=lfnwRc&result=1&isAdvanced=false#eid> [as of Mar. 18, 2020].) Whereas consent is a "[v]oluntary agreement to or acquiescence in what another proposes or desires . . . ." (*Id*. at <https://oed.com/view/Entry/39517?rskey =E5P1qx&result=1&isAdvanced=false#eid> [as of Mar. 18, 2020].) Written consent requires written words expressing agreement or acquiescence, not just words expressing receipt or understanding. Luoma's acknowledgement was deficient in this regard.

7

We understand Reeve to suggest that Luoma's acquiescence can be inferred from his receipt of the letter, his understanding of the letter, and his lack of objection to the referral fee. But because consent must be expressed in writing, silence cannot convey written consent. " '[C]onsent is active, while not objecting is merely passive. The old adage, "Silence gives consent," is not true in law; for there it only applies where there is some duty or obligation to speak. [Citations.]' [Citation.]" (*Stanley v. Superior Court* (2012) 206 Cal.App.4th 265, 283.)

In the alternative, Reeve argues that if Luoma's acknowledgement was ambiguous as to consent, the ambiguity was resolved by Luoma's subsequent testimony that his acknowledgement expressed his agreement that the referral fee could be paid to Reeve. We agree that extrinsic evidence, such as later testimony, may be used to resolve ambiguities or uncertainties in some circumstances of contract interpretation. (See *Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93, 112.) But here there is no ambiguity or uncertainty in the language of the written acknowledgment. The language of the acknowledgement demonstrates receipt and understanding, it does not express consent to the referral fee agreement.

Reeve also seeks to support his position by referencing purported expert deposition testimony from an attorney named Lindsay Slatter. Ms. Slatter is described in the record as an ethics attorney, but the full transcript of her deposition is not in the appellate record. Instead, a portion of her deposition testimony was read into the record at trial. When asked if the September 21 letter complied with rule 2-200, Slatter replied: "It refers to certain aspects of Rule 2-200, but I can't say that it is complete because I don't have the full amounts of money. I don't have the -- I mean, it's not absolutely complete for all the items, but it is arguable that it complies." The testimony does not help Reeve in this case. Among other things, Reeve does not provide us with details of Slatter's expertise, or information as to why Slatter thought the acknowledgement

arguably complied with former rule 2-200, or an explanation as to why Slatter's opinion should be more dispositive than our own analysis.

Reeve further argues the jury was properly instructed concerning the requirements of former rule 2-200 and unanimously found in Reeve's favor. Additionally, he argues that the trial court denied Meleyco's motion for new trial or judgment notwithstanding the verdict. Indeed, the trial court opined that the jury "got it right." Nevertheless, we now determine as a matter of law that the evidence was insufficient to conclude that Luoma consented to the referral fee agreement as required by former rule 2-200. Accordingly, the referral fee agreement is unenforceable as against public policy, and Reeve cannot recover for breach of contract.

II

Meleyco next argues the quantum meruit claim is barred by the applicable statute of limitations.

When a referral fee agreement is unenforceable as against public policy, the referring attorney may nevertheless recover the reasonable value of the legal services under a quantum meruit theory. (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 460-461.) The jury awarded Reeve $78,750 under a quantum meruit theory, as well as under the breach of contract theory.

Reeve performed all services relating to the 2011 State of California settlement before June 30, 2011, and on that date, Meleyco distributed the proceeds of the 2011 State of California settlement without paying Reeve. Reeve filed his complaint against Meleyco on December 3, 2014, more than three years after Reeve last provided services relating to the 2011 State of California settlement.

The statute of limitations for recovery under a quantum meruit theory is two years. (Code Civ. Proc., § 339; *Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th 990, 996.) Meleyco demurred to Reeve's quantum meruit cause of action on the ground that the limitations period expired before Reeve filed his complaint, but the

9

trial court overruled the demurrer as to the quantum meruit cause of action on the ground that although the two-year limitations period applies to an agreement not in writing, the four-year limitations period applies here because there is a writing. Meleyco now contends that, contrary to the trial court's ruling, the applicable limitations period is two years and it expired on Reeve's quantum meruit claim before Reeve filed the complaint.

Reeve does not dispute that his complaint was filed more than two years after he ceased providing services relating to the 2011 State of California settlement; instead, he argues that, because there was a writing -- the referral fee agreement between Meleyco and Reeve -- the four-year statute of limitations under Code of Civil Procedure section 339, subdivision (a) applies. The argument fails because the referral fee agreement was unenforceable as against public policy and the quantum meruit cause of action sought recovery other than upon the unenforceable contract.

The four-year statute of limitations applies to "[a]n action upon any contract, obligation or liability founded upon an instrument in writing . . . ." (Code Civ. Proc., § 337, subd. (a).) But quantum meruit recovery is not based on a contract. The quantum meruit theory allows recovery of the reasonable value of services if there is no enforceable contract governing the relationship. (*Leighton v. Forster* (2017) 8 Cal.App.5th 467, 490.) Therefore, because quantum meruit recovery is not an action founded upon a contract or writing, the presence of an unenforceable contract does not extend to four years the limitations period for a claim based on quantum meruit.

Reeve nevertheless posits policy reasons for applying the four-year limitations period in this case. Moreover, he asserts it would be unfair to rule that the referral fee agreement is unenforceable and also to rule that the two-year statute of limitations applies to his quantum meruit cause of action. But we are bound by the law as written; Reeve's arguments are matters for the Legislature. (*Krusesky v. Baugh* (1982) 138 Cal.App.3d 562, 566.)

Reeve's recovery under the quantum meruit theory is barred because he did not file his complaint within the two-year limitations period. Having concluded, as a matter of law, that the limitations period expired on Reeve's quantum meruit claim for the 2011 State of California settlement, we need not consider Meleyco's additional challenges to the jury's quantum meruit verdict.

### III

In addition, Meleyco claims Reeve is not entitled to prejudgment interest. We agree. Because the evidence does not support the judgment in favor of Reeve on either breach of contract or quantum meruit, the trial court's award of prejudgment interest is also unsupported.

### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to enter judgment in favor of Meleyco. Meleyco is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/S/
MAURO, J.

We concur:

/S/
RAYE, P. J.

/S/
ROBIE, J.